OPINION *Page 2 
{¶ 1} Defendant-appellant, Devon Riffle, appeals from his sentences and convictions in the Muskingum County Court of Common Pleas on one count of aggravated robbery with a firearm specification, a felony of the first degree, in violation of R.C. 2911.01(A) (1) and one count of having a weapon while under a disability, a felony of the third degree, in violation of R.C. 2923.13(A) (2). Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE CASE AND FACTS {¶ 2} In the early morning hours of October 1, 2006, Connie Bell, a 61-year-old woman, was driving through Gaysport, Ohio, delivering newspapers. (T. at 89). Ms. Bell pulled into a parking lot and stopped her car in order to transfer some of the newspapers from the trunk of her car to the back seat. (T. at 90). While Ms. Bell was taking the newspapers out of the trunk of her car, appellant walked up to her and asked her if she could give him a ride to a trailer park approximately five miles away. Id. Although Ms. Bell was initially reluctant to give appellant a ride, she eventually agreed and made room for appellant to sit in the back seat of her car. Id.
 {¶ 3} Upon arriving at the trailer park, Ms. Bell asked appellant which road to take in order to get to the proper trailer. (T. at 91). According to Ms. Bell, she then turned around to face appellant and he was pointing "a barrel of a [.22 rifle] right at [her] head, and he said he would shoot [her]." (T. at 91; 92). Ms. Bell testified that she "put the brake on and . . . turned around [and] with [one] hand . . . put it [the barrel of the rifle] on [the] newspapers that were stacked up." (T. at 91). After Ms. Bell gained control of the far end of the rifle, she testified that appellant asked her for money, to which she *Page 3 
responded, "All I've got is $6.00, if you would have asked me, I would have gave you the damn $6.00." (T. at 91-92).
 {¶ 4} Ms. Bell further testified that, at that point, she still had her hand around the barrel of the gun, so she "shoved the barrel up — the stock up against him [Mr. Riffle]." (T. at 92). Although Ms. Bell had pushed the barrel of the rifle to the ground and shoved appellant with the stock, she testified that, at that time, appellant threatened to shoot her again. (T. at 92). In response, Ms. Bell testified that she said, "Like hell you will. . . . [T]hat's when I shoved it [the stock of the rifle] completely up against him [Mr. Riffle] and I told him to uncock the gun. Well, it's not loaded. And I said: `You uncock it or I will,' and two bullets fell out in my hand." (T. at 92).
 {¶ 5} Ms. Bell placed the bullets in a little tray in her car and took the rifle away from appellant. (T. at 93). She transferred the rifle to the front seat of her car, and decided to drive appellant back to Gaysport. Id. Before leaving for Gaysport, Ms. Bell placed the $6.00 on the dashboard of her car. Id. Upon returning to Gaysport, Ms. Bell stopped her car near a house where appellant said he was living, and appellant exited. (T. at 94). Ms. Bell then gave the rifle back to appellant. (T. at 94). She further testified that when appellant was getting out of her car, he took the $6.00 that was on her dashboard. (T. at 101). Once appellant closed the car door, Ms. Bell drove to a BP station and called the police to report the alleged incident. (T. at 96). Ms. Bell described appellant to the police as being a thin, white male. (T. at 97). She also reported that he had facial hair and that she noticed a tattoo on his left hand "that looked like a face of a cat." (T. at 98). *Page 4 
 {¶ 6} A few weeks before the alleged incident, appellant had moved in with Geneva and Richard Schmidt in Gaysport, Ohio. (T. at 113). Mr. and Mrs. Schmidt heard appellant enter the house at approximately 5:00 a.m. on October 1, 2006. (T. at 117-118). A few days later, while at a store in Gaysport, Mrs. Schmidt heard that a robbery had occurred. (T. at 118). She became suspicious that appellant had been involved in the robbery and called her husband who worked as a house painter to ask if somebody had borrowed his rifle. Id. Mr. Schmidt told Mrs. Schmidt where his .22 was located in the house, and then asked her to check if the rifle was loaded. (T. at 119). Mr. Schmidt testified that he normally kept his rifle loaded. (T. at 130). However, when Mrs. Schmidt opened the chamber, she saw that the rifle was not loaded. (T. at 119).
 {¶ 7} Throughout the duration of time that appellant had been living with the Schmidts, Mr. Schmidt would take appellant to various job sites so that appellant could assist with painting. (T. at 132). On the date that Mrs. Schmidt called Mr. Schmidt to inquire into whether anyone had borrowed the rifle, appellant was with Mr. Schmidt at a job site. After Mr. Schmidt finished talking to his wife, he confronted appellant about whether Mr. Riffle was involved with the alleged robbery. (T. at 134). Appellant stated that he did not "remember anything about it." Id. Mr. Schmidt became upset and asked appellant to leave. Id.
 {¶ 8} Based on the information that the police received from Mr. Schmidt's father, Mr. Riffle was located and arrested. (T. at 141). While at the Muskingum County Sheriff's Department, appellant waived his Miranda rights and made a statement.
 {¶ 9} In his statement to the police appellant admitted that on the night in question he had "been drinking beer, doing shots of whiskey and eating Xanaxes." (T. at *Page 5 
147-148). Appellant remembered getting into a car with a woman. (Id. at 148). Appellant remembered further that there were a lot of newspapers in the car. (Id.). Further appellant could remember "looking into a woman's eyes and holding her hand." (Id.). Appellant additionally remembered Mr. Schmidt "getting on him" for being up and in the kitchen when appellant returned home. (T. at 150).
 {¶ 10} Subsequently, appellant was indicted for aggravated robbery and having a weapon while under a disability. Additionally, the aggravated robbery charge carried a gun specification.
 {¶ 11} Appellant pleaded not guilty and proceeded to a jury trial. Near the close of State's case-in-chief, appellant's attorney stipulated to the following facts:
 {¶ 12} "[Prosecutor]: Your Honor, at this time the State had intended to call Detective Madden from the Zanesville Police Department. However, in lieu of his testimony, the State and defendant have entered into a stipulation in regards to his testimony, which I'll read at this time.
 {¶ 13} "The stipulation reads that the State of Ohio and the defendant, Devon Riffle, stipulate and agree that the defendant has previously been convicted of two counts of robbery, in violation of Ohio Revised Code Section 2911.02, paragraph (A)(2), in Muskingum County Court of Common Pleas in Case No. CR2002-011A, and that these convictions of robbery are felony offenses of violence, and that by reason of these convictions, the defendant is under a legal disability and cannot knowingly acquire, have, carry or use a firearm or dangerous ordnance. A copy of the sentencing entry indicates [Case] No. CR2002-011A has been marked as State's Exhibit . . . 15 and will be submitted into evidence for consideration by the jury without objection by the defendant. *Page 6 
 {¶ 14} "[Defense Counsel]: Yes, Your Honor". (T. at 192-193).
 {¶ 15} The jury convicted appellant of aggravated robbery; having a weapon while under a disability; and the gun specification that was attached to the aggravated-robbery charge. (T. at 241-242). The trial court sentenced appellant to ten years for aggravated robbery; three years for the gun specification; and five years for having a weapon while under a disability. (February 6, 2007 Judgment Entry). The trial court further ordered that the terms of imprisonment be served consecutively, making appellant's total sentence eighteen years. Id. Additionally, the trial court found that:
 {¶ 16} "[Mr. Riffle] was on post release control at the time of the commission of the offenses herein. [And] pursuant to ORC § 2929.141 this Court terminates [Mr. Riffle's] period of post release control under Muskingum County Common Pleas Court, Case Number CR2002-011A and hereby orders that [Mr. Riffle] serve the remainder of the time left on post release control consecutively] to the sentences imposed herein."
 {¶ 17} Appellant timely appeals and raises the following three assignments of error:
 {¶ 18} "I. TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL, IN VIOLATION OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 10 ARTICLE I OF THE OHIO CONSTITUTION, FOR STIPULATING TO THE NAMES AND NATURE OF MR. RIFFLE'S PRIOR CONVICTIONS.
 {¶ 19} "II. TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL, IN VIOLATION OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION, FOR *Page 7 
FAILING TO REQUEST THAT THE WEAPON-WHILE-UNDER-A-DISABILITY CHARGE BE BIFURCATED FROM THE AGGRAVATED-ROBBERY CHARGE.
 {¶ 20} "III. THE TRIAL COURT COMMITTED PLAIN ERROR AND VIOLATED MR. RIFFLE'S RIGHT TO DUE PROCESS UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 16, ARTICLE I OF THE OHIO CONSTITUTION WHEN IT FAILED TO PROVIDE THE JURY WITH A LIMITING INSTRUCTION REGARDING THE FACT THAT MR. RIFFLE'S PREVIOUS CONVICTIONS FOR ROBBERY AND THEFT IN CASE NUMBER CR2002-011A WERE TO BE CONSIDERED ONLY WHILE DELIBERATING ON THE WEAPON-WHILE-UNDER-A-DISABILITY CHARGE".
 I. {¶ 21} In his first assignment of error, appellant argues that he was denied effective assistance of trial counsel.
 {¶ 22} A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry in whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. Lockhart v. Fretwell (1993), 506 U.S. 364,113 S.Ct. 838, 122 L.Ed.2d 180; Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley (1989),42 Ohio St.3d 136.
 {¶ 23} In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Bradley, 42 Ohio St. 3d at 142. Because of the difficulties inherent in *Page 8 
determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance. Id.
 {¶ 24} In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. This requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial; a trial whose result is reliable.Strickland 466 U.S. at 687; 694, 104 S.Ct. at 2064; 2068. The burden is upon the defendant to demonstrate that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Id.; Bradley, supra at syllabus paragraph three. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Strickland, supra;Bradley, supra.
 {¶ 25} The United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Bradley at 143, quotingStrickland at 697. Accordingly, we will direct our attention to the second prong of the Strickland test.
 {¶ 26} Appellant's arguments center upon his conviction for having a weapon while under a disability. R.C. 2923.13 provides, in relevant part, "no person shall knowingly acquire, carry, have or use any firearm or dangerous ordnance . . . if the person is under indictment for or has been convicted of a felony offense of violence. . . ." Accordingly, a "previous offense of violence" was, in this case, a necessary element of the crime with which appellant was charged. *Page 9 
 {¶ 27} Appellant contends that counsel was ineffective because, rather than stipulating that appellant had previously been convicted of "an offense of violence" counsel, instead, stipulated that appellant has had two prior convictions for robbery. Further counsel did not object to the admission into evidence of the judgment entry of conviction for the prior robbery offenses. Robbery, in violation of R.C. 2911.02, is an "offense of violence." R.C. 2901.01(A) (9).
 {¶ 28} Appellant relies on the United States Supreme Court case ofOld Chief v. United States (1997), 519 U.S. 172, 117 S.Ct. 644,136 L.Ed.2d 574.
 {¶ 29} In Old Chief, the United States Supreme Court held that a trial court had abused its discretion by rejecting a stipulation that the defendant had committed an offense punishable by imprisonment of more than one year and allowing the prosecution to present the judgment entry of defendant's prior conviction for assault causing bodily injury. Id. at 174. In Old Chief, the defendant was charged with assault with a dangerous weapon and a violation of Section 922(g)(1), Title 18, U.S. Code which makes it unlawful for anyone "`who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year' to `possess * * * any firearm.'" Id. The United States Supreme Court found that the judgment entry should have been excluded pursuant to Evid.R. 403 because the minimal probative value of the judgment entry was substantially outweighed by the danger of unfair prejudice. Id. at 190. The court reasoned that:
 {¶ 30} "The issue is not whether concrete details of the prior crime should come to the jurors' attention but whether the name or general character of that crime is to be disclosed. Congress, however, has made it plain that distinctions among generic *Page 10 
felonies do not count for this purpose; the fact of the qualifying conviction is alone what matters under the statute. `A defendant falls within the category simply by virtue of past conviction for any [qualifying] crime ranging from possession of short lobsters * * * to the most aggravated murder.' The most the jury needs to know is that the conviction admitted by the defendant falls within the class of crimes that Congress thought should bar a convict from possessing a gun * * *." Id. at 190-191.
 {¶ 31} The court in Old Chief found that the defendant's stipulation provided the jury with conclusive evidence of the prior conviction element. Id. at 186. The court determined that the unfair prejudice was significant because of the risk the jury would declare guilt based upon an emotional response to the name or nature of the earlier conviction rather than on the evidence at hand.
 {¶ 32} However, in Old Chief the United States Supreme Court did not remand the case to the trial court for a new trial; rather the Court remanded the case to the Ninth Circuit Court of Appeals.519 U.S. at 192, 117 S.Ct. at 656. In a footnote, the United States Supreme Court made the following observation: "[i]n remanding, we imply no opinion on the possibility of harmless error, an issue not passed upon below." Id. at n. 11.
 {¶ 33} Upon remand the United States Court of Appeals for the Ninth Circuit held: "[t]he judgment of this court has been reversed . . ., and this case is remanded to the district court for further proceedings in light of the Supreme Court's opinion in Old Chief v. United States,519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997). The district court may consider whether any error found by the Supreme Court was harmless." 121 F.3d 448. (Footnote omitted). *Page 11 
 {¶ 34} In State v. Brown (1992), 65 Ohio St.3d 483, 605 N.E.2d 46, the court set forth the following standard:
 {¶ 35} "In making a Crim. R. 52(A) harmless error analysis, any error will be deemed harmless if it did not affect the accused's `substantial rights.' Otherwise stated, the accused has a constitutional guarantee to a trial free from prejudicial error, not necessarily one free of all error. Before constitutional error can be considered harmless, we must be able to `declare a belief that it was harmless beyond a reasonable doubt.' Chapman, supra, 386 U.S. at 24, 87 S.Ct. at 828,17 L.Ed.2d at 711. Where there is no reasonable possibility that unlawful testimony contributed to a conviction, the error is harmless and therefore will not be grounds for reversal. State v. Lytle (1976), 48 Ohio St.2d 391, 2 O.O.3d 495, 358 N.E.2d 623, paragraph three of the syllabus, vacated on other grounds in (1978), 438 U.S. 910, 98 S.Ct. 3135, 57 L.Ed.2d 1154." Id. at 485, 605 N.E.2d at 46.
 {¶ 36} The test for determining whether the admission of inflammatory or otherwise erroneous evidence is harmless and non-constitutional error requires the reviewing court to look at the whole record, leaving out the disputed evidence, and then to decide whether there is other substantial evidence to support the guilty verdict. State v. Davis
(1975), 44 Ohio App.2d 335, 347. If there is substantial evidence, the conviction should be affirmed, but if there is not other substantial evidence, then the error is not harmless and a reversal is mandated. Id.
 {¶ 37} Upon review, we do not find that the admission of the previous robbery convictions of the appellant to have affected the outcome of the trial as sufficient evidence of appellant's guilt was presented. *Page 12 
 {¶ 38} Ms. Bell identified appellant's tattoo at trial. (T. at 98-100). Further the assailant told Ms. Bell his name. (Id. at 93). Ms. Bell dropped the assailant off near the Schmidt home. (Id. at 95). Ms. Bell identified the rifle the assailant used during the incident. (Id. at 100). She further testified that the assailant held her hand and said he was sorry. (Id. at 101).
 {¶ 39} Richard Schmidt, Jr. testified that in the early morning hours of the day in question, he was awakened by appellant who was in the kitchen. (T. at 130). He testified that appellant became nervous when he observed police cruisers in the neighborhood. (Id. at 133). Appellant would sit inside Mr. Schmidt's work van until the cruiser's passed. (Id.). Mr. Schmidt identified the rifle used in the robbery as belonging to him. (Id. 132).
 {¶ 40} In his statement to the police appellant admitted that on the night in question he had "been drinking beer, doing shots of whiskey and eating Xanaxes." (T. at 147-148). Appellant remembered getting into a car with a woman. (Id. at 148). Appellant remembered further that there were a lot of newspapers in the car. (Id.). Further appellant could remember "looking into a woman's eyes and holding her hand." (Id.). Appellant additionally remembered Mr. Schmidt getting on him for being up and in the kitchen when appellant returned home. (T. at 150).
 {¶ 41} The evidence of appellant's guilt introduced at trial was such that there is no reasonable possibility that, if the jury had not been informed of the specific nature of appellant's prior offenses that they would not have found him guilty of any of the charges that they did.
 {¶ 42} Appellant's first assignment of error is overruled. *Page 13 
 II. {¶ 43} Appellant claims that his trial counsel was ineffective for failing to move to sever the having a weapon while under a disability charge from the aggravated robbery charge for purposes of trial. We disagree.
 {¶ 44} A determination on severance lies in the trial court's sound discretion. State v. Schiam (1992), 65 Ohio St.3d 51. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983) 5 Ohio St.3d 217. Crim.R. 14 governs relief from prejudicial joinder and states the following in pertinent part:
 {¶ 45} "If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment, information, or complaint, or by such joinder for trial together of indictments, informations or complaints, the court shall order an election or separate trial of counts, grant a severance of defendants, or provide such other relief as justice requires."
 {¶ 46} Crim.R. 8(A) governs joinder of offenses and states the following:
 {¶ 47} "Two or more offenses may be charged in the same indictment, information or complaint in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct." *Page 14 
 {¶ 48} "It is well-established that the law favors joinder because the avoidance of multiple trials conserves time and expense and minimizes the potentially incongruous outcomes that can result from successive trials before different juries." State v. Glass (March 9, 2001), Greene App. No. 2000 CA 74, at 2, citing State v. Schiebel (1990),55 Ohio St.3d 71, 86-87; State v. Torres (1981), 66 Ohio St.2d 340, 343; andState v. Thomas (1980), 61 Ohio St.2d 223, 225.
 {¶ 49} We note that the trial court in the case at bar specifically instructed the jury that "[t]he charges set forth in each count in the indictment constitute a separate and distinct matter. You must consider each count and the evidence applicable to each count separately and you must state your findings as to each count uninfluenced by your verdict as to any other count. The defendant may be found guilty or not guilty of any one or all of the offenses charged." (T. at 235).
 {¶ 50} Upon review, we fail to find undue prejudice caused by the joinder of the two counts. Each of the counts required the State to prove that appellant had or used a firearm. As we discussed in relation to appellant's first assignment of error, the evidence of appellant's guilt introduced at trial was such that there is no reasonable possibility that, if the counts were severed and tried separately they would not have found him guilty of any of the charges that they did.
 {¶ 51} As no prejudice occurred from the failure to move for severance, counsel was not ineffective.
 {¶ 52} Appellant's second assignment of error is overruled. *Page 15 
 III. {¶ 53} In his third assignment of error appellant argues that the trial court committed plain error and violated appellant's right to due process when it failed to sua sponte provide the jury with a limiting instruction that appellant's prior convictions could only be used in deciding the having a weapon while under a disability charge. We disagree.
 {¶ 54} "[A]fter arguments are completed, a trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder." State v. Comen (1990), 50 Ohio St. 3d 206, paragraph two of the syllabus.
 {¶ 55} Rule 30 of the Ohio Rules of Criminal Procedure provides that a party must object to an omission in the court's instructions to the jury in order to preserve the error for appeal. "A criminal defendant has a right to expect that the trial court will give complete jury instructions on all issues raised by the evidence." State v.Williford (1990), 49 Ohio St. 3d 247, 251-252. (Citations omitted). Where the trial court fails to give complete or correct jury instructions the error is preserved for appeal when defendant objects, whether or not there has been a proffer or written jury instruction offered by the defendant. (Id.). Even if an objection is not made in accordance with Rule 30 of the Ohio Rules of Criminal Procedure, or a written jury instruction is required to be offered by the defendant, Rule 52(B) of the Ohio Rules of Criminal Procedure, the so-called "plain-error doctrine" applies to the failure of the court to properly instruct the jury on "all matters of law necessary for the information of the jury in giving its verdict . . ." pursuant to Section 2945.11 of the Ohio Revised Code. See, State v. Williford, supra; *Page 16 State v. Gideons (1977), 52 Ohio App. 2d 70; State v. Bridgeman (1977),51 Ohio App. 2d 105.
 {¶ 56} In Neder v. United States (1999), 527 U.S. 1, 119 S.Ct. 1827, the United State Supreme Court held that because the failure to properly instruct the jury is not in most instances structural error, the harmless-error rule of Chapman v. California, 386 U.S. 18, 87 S.Ct. 824,17 L.Ed.2d 705 applies to a failure to properly instruct the jury, for it does not necessarily render a trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence.
 {¶ 57} In the case at bar, appellant concedes that he did not object nor did he request orally or in writing the limiting instruction which he now contends should have been given by the trial court. Accordingly, our review of the alleged error must proceed under the plain error rule of Crim. R. 52(B).
 {¶ 58} Crim.R. 52(B) provides that, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. In order to find plain error under Crim.R. 52(B), it must be determined, but for the error, the outcome of the trial clearly would have been otherwise. Id. at paragraph two of the syllabus.
 {¶ 59} In U.S. v. Dominguez Benitez (2004), 542 U.S. 74,124 S.Ct. 2333, the Court defined the prejudice prong of the plain error analysis. "It is only for certain structural errors undermining the fairness of a criminal proceeding as a whole that even preserved error requires reversal without regard to the mistake's effect on the *Page 17 
proceeding. See Arizona v. Fulminante, 499 U. S. 279, 309-310 (1991) (giving examples).
 {¶ 60} "Otherwise, relief for error is tied in some way to prejudicial effect, and the standard phrased as `error that affects substantial rights,' used in Rule 52, has previously been taken to mean error with a prejudicial effect on the outcome of a judicial proceeding. SeeKotteakos v. United States, 328 U. S. 750 (1946). To affect "substantial rights," see 28 U. S. C. § 2111, an error must have "substantial and injurious effect or influence in determining the . . . verdict."Kotteakos, supra, at 776." Id. at 81-82; 124 S.Ct. at 2339. See, also,State v. Barnes (2002), 94 Ohio St.3d 21, 759 N.E.2d 1240.
 {¶ 61} The defendant bears the burden of demonstrating that a plain error affected his substantial rights. United States v. Olano (1993), 507 U.S. at 725,734, 113 S.Ct. 1770; State v. Perry (2004),101 Ohio St.3d 118, 120 802 N.E.2d 643, 646. Even if the defendant satisfies this burden, an appellate court has discretion to disregard the error and should correct it only to `prevent a manifest miscarriage of justice.'"State v. Barnes (2002), 94 Ohio St.3d 21, 27, 759 N.E.2d 1240, quotingState v. Long (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus. Perry, supra, at 118, 802 N.E.2d at 646.
 {¶ 62} Based upon the record and our disposition of appellant's first and second assignments of error we find that appellant has failed to demonstrate that the trial court's failure to sua sponte give the jury a limiting instruction affected his substantial rights.
 {¶ 63} Accordingly, appellant's third assignment of error is overruled. *Page 18 
 {¶ 64} For the foregoing reasons, the judgment of the Muskingum County Court of Common Pleas, Ohio, is affirmed.
 Gwin, P.J., Farmer, J., and Wise, J., concur. *Page 19 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Muskingum County Court of Common Pleas, Ohio, is affirmed. Costs to appellant. *Page 1