OPINION *Page 2 
{¶ 1} Appellant Freddie Meade appeals his conviction and sentence entered on May 29, 2007, in the Licking County Common Pleas Court on one count of Rape and one count of Gross Sexual Imposition.
 {¶ 2} Appellee is State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 3} On September 29, 2006, Appellant Freddie Meade was indicted by the Licking County Grand Jury on one count of Rape, in violation of R.C. § 2907.02, a felony of the first degree, and one count of Gross Sexual Imposition, in violation of R.C. § 2907.05, a felony of the third degree.
 {¶ 4} On October 3, 2006, Appellant entered a not guilty plea and the matter was scheduled for trial.
 {¶ 5} On November 20, 2006, appellant, through counsel, filed a Motion to Suppress Statements.
 {¶ 6} On December 19, 2006, the trial court held a hearing on this motion. At the suppression hearing, the State presented the testimony of Detective Ken Ballantine and Social Worker Heidi Ballengee.
 {¶ 7} Det. Ballantine testified that Appellant made multiple trips to the police department that day. (Supp. T. at 11-12). Appellant was asked to come to the police department and he initially arrived in the morning and was asked to come back at 5:30 in the afternoon. Appellant was then again asked to come back at 6:30 p.m. due to the unavailability of the Detective. Appellant was then escorted to the room in which he talked to the Detective and Social Worker. *Page 3 
 {¶ 8} Detective Ballantine testified that during the interview he was in plain clothes (i.e. a business suit) but that he did have a firearm on his belt. (Supp. T. at 11). He further testified that he told Appellant he was not under arrest and was free to leave. He later testified he did not provide Miranda warnings during this part of the interview. (Supp. T. at 22).
 {¶ 9} Det. Ballantine testified that Appellant stated that he knew the victim Sarah's father, and that he stayed at their house for a couple of months. He stated that Appellant at first denied the allegations. (Supp. T. at 18-19). Det. Ballantine then testified that Appellant next stated that he was drunk and did not remember but then admitted to sexually touching Sarah on one occasion, inserting his finger in her vagina and touching her breast over her clothes. (Supp. T. at 20). He further testified that Appellant also stated that another incident occurred approximately two weeks later when Sarah came into the bathroom and touched his penis.
 {¶ 10} Det. Ballantine testified that this initial interview lasted approximately one hour. (Supp. T. at 21). After Appellant made these statements, Det. Ballantine asked him if he would be willing to make a taped statement. Appellant agreed and made the same admissions on the taped statement, which lasted approximately a half hour. Once the taped statement was completed, Appellant was placed under arrest. (Supp. T. at 23). At this time, Det. Ballantine advised appellant of his Miranda warnings. (Supp. T. at 24).
 {¶ 11} At the close of the hearing, the trial court overruled Appellant's motion to suppress.
 {¶ 12} On April 16, 2007, a jury trial commenced. *Page 4 
 {¶ 13} The first witness to testify at trial was the alleged victim Sarah Miller. She testified that she was 12 years old at the time of this incident and that she knew the Appellant. (T. Vol. I at. 63-64). She testified that while Appellant was staying at her house, he came into her bedroom and that he "put his hand in [her]". She stated this happened in August of 2006. (T. Vol. I at 67). She stated that Appellant came in her room, told her that he loved her, pulled her panties down and penetrated her with his fingers. (T. Vol. I, at 67-71). She testified that she told her Uncle Mike what had happened the next day. (T. Vol. I at 75).
 {¶ 14} The jury then heard testimony from Detective Ballantine, whose testimony was similar to that at the suppression hearing.
 {¶ 15} Additionally, the jury heard testimony from Kelly Justus, a pediatric nurse practitioner and sexual assault nurse examiner, who examined the victim in this case. She testified that during the examination, the victim told her that "somebody had touched her private part, her vagina." (T. at 128). The victim told her that she was there "because of Freddie." (T. at 130). Ms. Justus further testified that the victim told her that Freddie penetrated her digitally and that it hurt when it happened. (T. at 130-131).
 {¶ 16} Ms. Justus further testified that the victim's genital exam was normal and that it is common to have no abnormal findings in cases of digital penetration. (T. at 133). She explained that her examination of the victim occurred approximately a month after when the sexual assault took place, and that any injury could have healed in that time. (T. at 133-134). She further stated that she would not necessarily expect physical findings in cases of digital penetration because in approximately "75 to 80 percent of *Page 5 
cases [they] see, and most research supports, that any documents — it could be intercourse and digital penetration there aren't findings" and that in those cases "[t]heir genitalia would be normal." (T. at 135)
 {¶ 17} The only defense witness was Appellant.
 {¶ 18} On April 17, 2007, following deliberations, the jury returned a guilty verdict.
 {¶ 19} On May 29, 2007, Appellant was sentenced to eight years at the Ohio Department of Rehabilitations and Corrections.
 {¶ 20} Appellant now appeals, assigning the following errors for review:
 ASSIGNMENTS OF ERROR {¶ 21} "I. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT WHEN IT OVERRULED HIS MOTION TO SUPPRESS STATEMENTS.
 {¶ 22} "II. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT WHEN IT ADMITTED HEARSAY EVIDENCE REGARDING THE PERCENTAGE OF CASES WHERE NO PHYSICAL FINDINGS OF ABUSE WOULD BE FOUND."
 I. {¶ 23} In his first assignment of error, Appellant argues that the trial court erred in overruling his motion to suppress. We disagree.
 {¶ 24} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. See: State v.Fanning (1982), 1 Ohio St.3d 19, 437 N.E.2d 583; State v. Klein (1991),73 Ohio App.3d 486, *Page 6 597 N.E.2d 1141, State v. Guysinger (1993), 86 Ohio App.3d 592,621 N.E.2d 726. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See: State v. Williams (1993), 86 Ohio App.3d 37,619 N.E.2d 1141. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994), 95 Ohio App.3d 93, 96,641 N.E.2d 1172, State v. Claytor (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906,908, and State v. Guysinger (1993), 86 Ohio App.3d 592, 594,621 N.E.2d 726.
 {¶ 25} In a motion to suppress, the trial court assumes the role of trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate witness credibility. Guysinger, supra, at 594, citations omitted. Accordingly, an appellate court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Id., citation omitted.
 {¶ 26} Appellant asserts the trial court should have suppressed the statements he made during his interview with Detective Ballantine arguing that such statements were not made voluntarily. More specifically, Appellant argues that he was effectively under arrest after he made admissions to the detective, therein requiring that he be provided Miranda warnings, and that the statements made to him that it would be in his *Page 7 
best interest to tell the truth and "[w]e can't help you until you admit" were improper inducements. (T. at 25, 54).
 {¶ 27} A defendant has the constitutional right against self-incrimination under both the Fifth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution. In interpreting this right, it has been held that the state may not use statements stemming from a custodial interrogation of the defendant unless it demonstrates the use of certain procedural safeguards to secure the privilege of against self-incrimination. Miranda v.Arizona (1966), 384 U.S. 436. The well-known Miranda warnings were thus created. Id.
 {¶ 28} Among these safeguards are the Miranda warning, the right to end questioning at any time until an attorney is obtained, and an intelligent, knowing and voluntary waiver of this privilege. Id. The safeguards prescribed by Miranda become applicable as soon as a suspect's freedom of action is curtailed to a "degree associated with formal arrest." Berkemer v. McCarty (1984), 468 U.S. 420, 440,104 S.Ct. 3138, 82 L.Ed.2d 317 (citation omitted).
 {¶ 29} In determining the voluntary nature of a waiver of a criminal suspect's Miranda rights, a reviewing court will look at the "totality of the circumstances." State v. Gumm, 73 Ohio St.3d 413, 429,653 N.E.2d 253, 1995-Ohio-24. In deciding whether a defendant's statement is voluntary, the trial court should consider factors including, "the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement."State v. Worley, 11th Dist. No. 2001-T-0048, 2002-Ohio-4516, at ¶ 161 (citation omitted). "A suspect's decision to waive his *Page 8 Fifth Amendment privilege against compulsory self-incrimination is made voluntarily absent evidence that his will was overborne and his capacity for self-determination was critically impaired because of coercive police conduct." State v. Dailey (1990), 53 Ohio St.3d 88,559 N.E.2d 459, paragraph two of the syllabus.
 {¶ 30} As stated above, at the suppression hearing, the trial court heard testimony from Detective Ballantine and Social Worker Heidi Ballengee.
 {¶ 31} Both witnesses testified that Appellant was told when he arrived for the interview that he was not under arrest, that he was not in custody, that the reason the door to Det. Ballantine's office was closed was for privacy reasons and not to keep him in the office, and that he was free to leave at any time. (T. at 16-17, 45-46).
 {¶ 32} No promises were made to Appellant and no threats of consequences or punishment were made to Appellant.
 {¶ 33} With regard to the offer of help being coercive, Ms. Ballengee explained that such statement was made to Appellant in relation to his substance abuse problems. (T. at 55-56).
 {¶ 34} Based upon the totality of the circumstances, we conclude that Appellant's statements to police were knowing and voluntary, and the trial court did not err in denying his motion to suppress.
 {¶ 35} Appellant's first assignment of error is overruled.
 II. {¶ 36} In his second assignment of error, Appellant argues that the trial court erred in admitting hearsay evidence regarding the percentage of cases where no physical findings of abuse would be found. We disagree. *Page 9 
 {¶ 37} In the case sub judice, counsel for Appellant made no objection to Nurse Justus' testimony. (T. Vol. I at 135). This Court must therefore find plain error in order to reverse.
 {¶ 38} In U.S. v. Dominguez Benitez (June 14, 2004), 542 U.S. 74,124 S.Ct. 2333, 159 L.Ed.2d 157, the Court defined the prejudice prong of the plain error analysis. "It is only for certain structural errors undermining the fairness of a criminal proceeding as a whole that even preserved error requires reversal without regard to the mistake's effect on the proceeding. See Arizona v. Fulminante, 499 U.S. 279, 309-310
(1991) (giving examples). "Otherwise, relief for error is tied in some way to prejudicial effect, and the standard phrased as `error that affects substantial rights,' used in Rule 52, has previously been taken to mean error with a prejudicial effect on the outcome of a judicial proceeding. See Kotteakos v. United States, 328 U.S. 750 (1946). To affect "substantial rights," see 28 U.S.C. § 2111, an error must have "substantial and injurious effect or influence in determining the. . .verdict." Kotteakos, supra, at 776." 124 S.Ct. at 2339. See, also, State v. Barnes (2002), 94 Ohio St.3d 21, 759 N.E.2d 1240. See, also, State v. Fisher, 99 Ohio St.3d 127, 129, 2003-Ohio-2761 at ¶ 7,789 N.E.2d 222, 224-225. The defendant bears the burden of demonstrating that a plain error affected his substantial rights. United States v.Olano (1993), 507 U.S. at 725,734, 113 S.Ct. 1770; State v. Perry
(2004), 101 Ohio St.3d 118, 120 802 N.E.2d 643, 646. Even if the defendant satisfies this burden, an appellate court has discretion to disregard the error and should correct it only to `prevent a manifest miscarriage of justice.'" State v. Barnes (2002), 94 Ohio St.3d 21, 27,759 N.E.2d 1240, quoting State v. Long (1978), *Page 10 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus.Perry, supra, at 118, 802 N.E.2d at 646.
 {¶ 39} Upon review, we find no error plain or otherwise. Under these circumstances, there is nothing in the record to show that the jury would have found Appellant not guilty had Nurse Justus not stated that most research supported her statements concerning the percentage of cases where no physical findings were found.
 {¶ 40} The admission or exclusion of evidence rests in the sound discretion of the trial court. Tate v. Tate, Richland App. No. 02-CA-86,2004-Ohio-22, ¶ 63, citing State v. Sage (1987), 31 Ohio St.3d 173, 180,510 N.E.2d 343.
 {¶ 41} Upon review of the record and the testimony of all of the witnesses, we find that in the circumstances of the case, no prejudice amounting to a denial of constitutional due process was shown.
 {¶ 42} Appellant's second assignment of error is overruled.
 {¶ 43} For the foregoing reasons, the judgment of the court of Common Pleas of Licking County, Ohio, is affirmed.
 By: Wise, J. Farmer, P. J., and Delaney, J., concur. *Page 11 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Licking County, Ohio, is affirmed. Costs assessed to appellant. *Page 1