OPINION
{¶ 1} Shawn Taylor was found guilty by a jury in the Montgomery County Court of Common Pleas of two counts of kidnapping, one count of robbery, one count of murder, and one count of involuntary manslaughter. He was sentenced to an aggregate term of twenty-three years to life. Taylor appeals. *Page 2 
 {¶ 2} We find that Taylor's convictions for robbery and for kidnapping to facilitate the robbery should have been merged for sentencing. In all other respects, the judgment of the trial court will be affirmed.
 I {¶ 3} On July 9, 2006, Myreon Mazur, a.k.a. "Chico," was badly beaten, stripped of his clothes, and robbed by a group of men outside a home at 454 Quitman in Dayton. By all accounts, the attack was motivated by a territorial dispute among drug dealers. Mazur stumbled away after the beating, but he was found a short time later by a Dayton police officer outside a nearby church. Although Mazur had no visible wounds, he was lying in the grass, moaning, and he stated that he was dying. He died a short time later at Miami Valley Hospital.
 {¶ 4} Several men, including Taylor, were charged in connection with Mazur's attack. Taylor was indicted on two counts of kidnapping, one count of robbery, three counts of felony murder (robbery, kidnapping, and felonious assault), and tampering with evidence. He was tried by a jury on November 26-30, 2007. The jury found Taylor guilty of robbery, two counts of kidnapping, and felony murder (kidnapping). The jury found Taylor not guilty of felony murder (felonious assault), but guilty on the lesser included offense of involuntary manslaughter (assault). The jury found Taylor not guilty of felony murder (robbery) and tampering with evidence.
 {¶ 5} Taylor was sentenced to four years each on the kidnappings, robbery, and involuntary manslaughter. He was sentenced to fifteen years to life on the felony murder. The court ordered that the kidnapping sentences run concurrently, that the felony murder and involuntary manslaughter sentences run concurrently but consecutively to the sentences for kidnapping, and that the robbery sentence run consecutive to all the others. Thus, the aggregate term was twenty-three years to life. *Page 3 
 {¶ 6} Taylor raises five assignments of error on appeal, including a supplemental assignment in a supplemental brief. We will address these assignments in an order that facilitates our discussion, beginning with the supplemental assignment.
 II {¶ 7} Taylor's supplemental assignment of error states:
 {¶ 8} "MR. TAYLOR'S DUE PROCES S RIGHTS AND CONSTITUTIONAL RIGHTS TO A GRAND JURY INDICTMENT AND NOTICE OF ALL THE ESSENTIAL ELEMENTS FOR WHICH HE WAS CHARGED WERE VIOLATED BY THE STATE'S FAILURE TO INCLUDE THE MENS REA ELEMENT INTO THE ROBBERY CHARGE."
 {¶ 9} Taylor contends that his robbery conviction must be reversed because the indictment lacked the mens rea element. Taylor relies onState v. Colon, 118 Ohio St.3d 26, 2008-Ohio-1624, 885 N.E.2d 917("Colon I "), which held that a robbery indictment is defective if it fails to state that the physical harm was recklessly inflicted, threatened, or attempted.
 {¶ 10} Robbery, as set forth at R.C. 2911.02(A)(2), is proscribed as follows:
 {¶ 11} "(A) No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:
 {¶ 12} "* * *
 {¶ 13} "(2) Inflict, attempt to inflict, or threaten to inflict physical harm on another[.]"
 {¶ 14} When a statute fails to specify a degree of culpability, recklessness is the "catchall culpable mental state," except for strict liability statutes, where the accused's mental state is irrelevant.State v. Lozier, 101 Ohio St.3d 161, 2004-Ohio-732, 803 N.E.2d 770, at ¶ 21.
 {¶ 15} There is no dispute that a robbery indictment that omits the mens rea element for the *Page 4 
act of inflicting, attempting to inflict, or threatening to inflict physical harm is defective because it omits one of the essential elements of the crime. Colon I at ¶ 10. However, Taylor did not object to this defect in the indictment at trial.
 {¶ 16} Taylor contends that the defect in the indictment created structural error that permeated the entire trial. He points out that the prosecutor never described his actions as reckless during trial and that the jury instructions also omitted the mens rea element. He also asserts that the prosecutor treated the robbery as a strict liability offense.
 {¶ 17} In Colon I, the supreme court concluded that the omission of the mens rea from a robbery indictment was structural error because "the defects in the indictment led to significant errors throughout the defendant's trial" and called into question whether the trial court had served its function as "a vehicle for the determination of guilt or innocence." Id. at ¶ 23, citing State v. Perry, 101 Ohio St.3d 118,2004-Ohio-297, 802 N.E.2d 643, at ¶ 17. The court subsequently observed that the circumstances justifying the structural error analysis inColon I were unique in that the defective indictment resulted in several other violations of the defendant's rights. State v. Colon,119 Ohio St.3d 204, 2008-Ohio-3749, 893 N.E.2d 169, at ¶ 6 ("Colon II "). "InColon I, * * * there was no evidence to show that the defendant had notice that recklessness was an element of the crime of robbery, nor was there evidence that the state argued that the defendant's conduct was reckless. * * * Further, the trial court did not include recklessness as an element of the crime when it instructed the jury. * * * In closing argument, the prosecuting attorney treated robbery as a strict-liability offense." Id. The court made clear, however, that where a defective indictment was not inextricably linked to other errors, plain error analysis, rather than structural error analysis, would be appropriate.Colon II at ¶ 7. It also observed that the facts in Colon were "unique" and that a defective indictment will *Page 5 
seldom permeate a trial to the extent that it did in Colon I. Id. at¶ 6 and ¶ 8.
 {¶ 18} Three of the considerations in Colon I are also present in this case: the indictment was defective in failing to mention that the required mens rea was recklessness; the prosecutor's closing argument did not mention recklessness; and the jury instructions did not define recklessness or include it as an element of the offense. Taylor argues that the fourth consideration — that the prosecutor discussed robbery as a strict liability offense in his closing argument — is present here as well, but we disagree. The prosecutor's statement on which Taylor relies for the strict liability argument tracks the language of the indictment. In our view, this statement did not suggest to the jury that robbery was a strict liability offense.
 {¶ 19} The question before us, then, is whether the facts in this case are so similar to Colon I that we must find structural error. ColonII makes clear that the facts in Colon I are unique, that applying the structural error analysis to a defective indictment is "appropriate only in rare cases," and that the holding in Colon I is be "confined to the facts in that case." Although several errors discussed in Colon I are also present in this case, the restrictive language of Colon II leads us to conclude that the facts are not sufficiently similar to justify a structural error analysis in this case. Significantly, the prosecutor in this case did not discuss robbery as a strict liability offense. In other words, the prosecutor did not mislead the jury as to the mens rea. Because we find this distinction to preclude the applicability ofColon I, we will review for plain error.
 {¶ 20} Where a party does not obj ect to an error at trial and the error is not a structural error, a reviewing court "may notice only `[p]lain errors or defects affecting substantial rights.' Crim. R. 52(B). Inherent in the rule are three limits placed on reviewing courts for correcting plain error. `First, there must be an error, i.e., a deviation from the legal rule. * * * Second, the error must be plain. *Page 6 
To be "plain" within the meaning of Crim. R. 52(B), an error must be an "obvious" defect in the trial proceedings. * * * Third, the error must have affected "substantial rights." We have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial.' State v. Barnes (2002), 94 Ohio St.3d 21, 27,759 N.E.2d 1240. Courts are to notice plain error `only to prevent a manifest miscarriage of justice.' State v. Long (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, paragraph three of the syllabus." State v.Byrd, Montgomery App. No. 22406, 2008-Ohio-5515, at ¶ 37-38. The party asserting plain error bears the burden of demonstrating it. Id. In this case, there was clearly an error, and the error was plain. The crucial question is whether the error affected the outcome of the trial. In our view, it did not. There can be little doubt that, had the jury been properly instructed on recklessness, it would have found that Taylor acted recklessly in inflicting physical harm during the robbery. Mazur was savagely kicked, stomped, and crushed with a rock such that the coroner compared his injuries to those commonly seen in blunt force injuries resulting from car accidents. This conduct was clearly reckless. Thus, the outcome of the trial would not have been different if the indictment had included the mens rea.
 {¶ 21} The supplemental assignment of error is overruled.
 III {¶ 22} Taylor's first and second assignments of error will be considered together. They state:
 {¶ 23} I. "THE TRIAL COURT ERRED WHEN IT FOUND MR. TAYLOR GUILTY OF FELONY MURDER (KIDNAPPING) AS THE EVIDENCE WAS INSUFFICIENT TO SUPPORT A CONVICTION."
 {¶ 24} II. "THE TRIAL COURT ERRED WHEN IT FOUND MR. TAYLOR GUILTY OF
FELONY MURDER (KIDNAPPING) AS THE CONVICTION WAS AGAINST THE MANIFEST *Page 7 
WEIGHT OF THE EVIDENCE."
 {¶ 25} Taylor contends that the evidence was insufficient to establish that Mazur' s death was proximately caused by the kidnapping and that, as such, he should not have been convicted of felony murder pursuant to R.C. 2903.02(B). He also argues that the death was not a foreseeable or intended consequence of the kidnapping. Further, Taylor contends that his conviction was against the manifest weight of the evidence because the jury lost its way in finding that the kidnapping resulted in Mazur's death.
 {¶ 26} An appellate court's function when reviewing the sufficiency of the evidence is to determine "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, paragraph two of the syllabus. On the other hand, when reviewing the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins (1997),78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541, citing State v.Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. Because the trier of fact sees and hears the witnesses and is particularly competent to decide "whether, and to what extent, to credit the testimony of particular witnesses," we must afford substantial deference to its determinations of credibility. State v. Lawson (Aug. 22, 1997), Montgomery App. No. 16288. A judgment should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. Martin, 20 Ohio App.3d at 175." *Page 8 
 {¶ 27} The state's evidence — and Taylor's own testimony — established that he was involved in the altercation that led to Mazur' s death. Taylor, Mazur, and several of their respective friends had been involved in a dispute about who could sell drugs at 454 Quitman. The woman who lived there would apparently let various people sell drugs in her home and yard if they gave drugs to her, but Taylor and his friends had previously warned Mazur and his friend, "Cry Baby," that they considered it their "drug spot" and that Mazur and Cry Baby should stay away. On July 9, 2006, Taylor and his friends heard that Mazur and Cry Baby were again at the "drug spot" and immediately went there to deal with the situation.
 {¶ 28} According to witnesses who were present in and around the house at 454 Quitman, Cry Baby was driving away as Taylor and his friends approached the house. They yelled at Cry Baby in his car and hit the car, but Cry Baby did not stop. Taylor proceeded to the house and found Mazur talking to the woman who lived there. According to witnesses, Taylor "rushed" in and placed Mazur in a headlock or "sleeper hold." Taylor, who was substantially bigger than Mazur, dragged Mazur outside in this position, eventually rendering him unconscious. While Mazur was outside on the ground, coming in and out of consciousness, Taylor and his friends beat him, kicked him, and stomped on him, while Mazur made virtually no effort to defend himself. Taylor then picked up a large rock, raised it above his head, and "slammed" it down on Mazur's chest.
 {¶ 29} When Mazur regained consciousness and attempted to walk away, he was pushed into a fence, and Taylor and his friends set upon Mazur to search for drugs and to take off his clothes and shoes. They left Mazur naked by the fence. After Taylor and his friends left, Mazur wandered a short distance to the grounds of a nearby church, where he was found by the police. Mazur was transported to a hospital but died a short time later. *Page 9 
 {¶ 30} The coroner testified that Mazur had suffered severe internal bleeding caused by a massive blow with great force. The coroner compared Mazur's injuries with the blunt force injuries that often result from traffic accidents, noting that both the liver and the pancreas were nearly torn into two pieces. The coroner also noted several broken ribs, contusions consistent with the tread of a shoe, and the absence of defensive injuries.
 {¶ 31} Taylor was convicted of kidnapping in violation of R.C. 2905.01(A)(2) and (3). These sections provide that no person, by force, threat, or deception, shall remove another from the place where the other person is found or restrain the liberty of the other person, in order to facilitate the commission of any felony or flight thereafter or to terrorize or to inflict serious physical harm on the victim. Taylor was convicted of kidnapping to terrorize or inflict serious physical harm based on the beating Mazur received at 454 Quitman and in order to facilitate the commission of a felony when Mazur was pushed against the fence and robbed. Taylor was also convicted of felony murder in violation of R.C. 2903.02(B) based on the kidnapping.
 {¶ 32} Based on a thorough review of the record, we conclude that Taylor's convictions for kidnapping and felony murder were neither based on insufficient evidence nor against the manifest weight of the evidence. The jury could have reasonably concluded that Taylor restrained Mazur of his liberty for the purposes of terrorizing and robbing him. Moreover, because the kidnapping facilitated a severe and vicious beating that caused Mazur's death, the jury's conclusion that Taylor was guilty of felony murder was also supported by the evidence and not against the manifest weight of the evidence.
 {¶ 33} The first and second assignments of error are overruled.
 IV *Page 10 {¶ 34} Taylor's fourth assignment of error states:
 {¶ 35} IV. "THE ROBBERY CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND THE EVIDENCE IS INSUFFICIENT TO SUPPORT THE ROBBERY CONVICTION."
 {¶ 36} Taylor claims that his robbery conviction was not supported by the evidence and was against the manifest weight of the evidence because the evidence established that the physical harm was inflicted prior to the robbery and did not "coerce the victim to hand over his possessions." The state responds that this was "one continuous event" and that the beating cannot be separated from the theft offense.
 {¶ 37} Although it is true that Mazur was beaten before he was robbed, and thus was not threatened into turning over his property, the beating facilitated the robbery in that it rendered Mazur incapable of resisting the robbery or fleeing. Under the circumstances presented, we agree with the state that the kidnapping and beating cannot be viewed in isolation from the robbery. The evidence was sufficient to prove that physical harm was inflicted in the commission of the robbery. Accordingly, the robbery conviction was not against the manifest weight of the evidence.
 {¶ 38} The fourth assignment of error is overruled.
 V {¶ 39} Taylor's third assignment of error states:
 {¶ 40} III. "THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT CONVICTED MR. TAYLOR OF ROBBERY AND THE SECOND COUNT OF KIDNAPPING."
 {¶ 41} Taylor contends that, for purposes of sentencing, the trial court should have merged his convictions for robbery and for kidnapping to facilitate a robbery, and that its failure to do so was *Page 11 
plain error.
 {¶ 42} Kidnapping and robbery are allied offenses of similar import when the restraint of the victim is merely incidental to the crime of robbery. State v. Logan (1979), 60 Ohio St.2d 126, 130-131, 135,397 N.E.2d 1345. In this case, the kidnapping to facilitate the robbery occurred when Taylor prevented Mazur from leaving the yard after Mazur had been badly beaten so that he could be searched for money and drugs. We agree with Taylor that this restraint was incidental to the robbery and that the counts should have been merged.
 {¶ 43} The third assignment of error is sustained.
 VI {¶ 44} Taylor's conviction for kidnapping to facilitate a robbery will be merged with his robbery conviction, and one concurrent kidnapping sentence will be vacated. In all other respects, the judgment of the trial court will be affirmed.
 BROGAN, J. and GRADY, J., concur. *Page 1