{¶ 48} I concur in the court's decision overruling the first assignment of error and dissent regarding the second assignment.
 {¶ 49} Plain errors are defects affecting substantial rights which may be noted although they were not brought to the attention of the trial court. Crim. R. 52(B). As correctly stated by the majority, such an error must have affected the outcome of the trial. State v. Barnes, 94 Ohio St.3d. 21, 27, 2002-Ohio-68; State v. Byrd, 178 Ohio App.3d 646,2008-Ohio-5515, ¶ 16.
 {¶ 50} Structural errors, on the other hand, are constitutional defects that defy analysis by *Page 14 
plain error or harmless error standards because they affect the framework within which the trial proceeds rather than simply being an error in the trial process itself. (Internal citations omitted.)State v. Colon, 118 Ohio St.3d 26, 2008-Ohio-1624, ¶ 20 ("ColonI"). "Such errors permeate `[t]he entire conduct of the trial from beginning to end' so that the trial cannot `reliably serve its function as a vehicle for determination of guilt or innocence.' [A] structural error mandates a finding of `per se prejudice.'" (Emphasis in original) (Internal citations omitted.) Id.
 {¶ 51} Examples of structural error, as listed in the dissent inColon I, include the complete denial of counsel, a biased trial judge, racial discrimination in the selection of a grand jury, denial of self-representation at trial, denial of public trial, and a jury instruction that defines reasonable doubt as "grave uncertainty." Id. at ¶ 48.
 {¶ 52} In Colon I, the court found that the lack of the inclusion of a mens rea for the offense of robbery constituted structural error. This finding was first based on the fact that the indictment did not meet constitutional requirements as it did not include all the essential elements of the offense charged against the defendant. Both parties agree that Portis' indictment, for violating R.C. 2911.02(A)(2), was for the same charge as Colon's and also did not include the mens rea element for robbery. Because of this, the defendant "was not properly informed of the charge so that he could put forth his defense." Id. at ¶ 28.
 {¶ 53} The second element of structural error recognized by ColonI is that "there is no evidence in the record that the defendant had notice that the state was required to prove that he had been reckless in order to convict him of the offense of robbery * * *." Id. at ¶ 30. The indictment and the bill of particulars provided to Portis did not mention a culpable mental state. The Bill of Particulars provided: "On or about October 20, 2007, the defendants * * * did steal U.S. currency from *Page 15 
G.Z. Pete's Bar located at 204 East Main Street, Springfield, Ohio, and did cause physical harm to an employee of the bar in doing so." Further, a review of the entire transcript discloses no mention of the word "reckless."
 {¶ 54} Colon I emphasized that the "state did not argue that the defendant's conduct in inflicting physical harm on the victim constituted reckless conduct," id. at ¶ 30, and, again, there is no reference, let alone argument concerning recklessness in Portis' case.
 {¶ 55} The State's position that there was reference in argument, as well as in the jury instructions, to the culpable mental state of "purpose" or "knowledge" is not dispositive. The jury was correctly instructed and the defendant was on notice concerning the applicability of such higher culpable mental states for accomplice liability; however, the fact that a defendant purposely aids another in the commission of the offense does not overcome the fact that there is no mens rea for the underlying offense (i.e., robbery) allegedly committed by the principal.
 {¶ 56} Colon I emphasized that another element in determining whether there was structural error is whether the mens rea was discussed in the instructions and the parties agree that it was not. Id. at ¶ 31.
 {¶ 57} Finally, in finding structural error, the Colon I court noted that the prosecuting attorney treated robbery as a strict liability offense, and in his closing said that Colon "robbed [the victim]. He attempted to commit a theft offense, and he inflicted harm. It's simple. I ask you to keep it that simple and find him guilty." Id. at ¶ 31, fn. 2.
 {¶ 58} In the opening statement of Portis' case, the prosecutor said:
 {¶ 59} "Now, what is robbery? You're going to get a legal definition of robbery, but I submit to you that there's essentially two — more or less two essential elements. The first is that we have to *Page 16 
have a theft. A theft crime, be it an attempted theft crime, an actual theft crime, something of that nature.
 {¶ 60} "The second component is that we have to have some sort of physical harm element. That can be actual physical harm, attempted physical harm, or the threat of physical harm. If we have those elements or those alternative elements, we have robbery." (Transcript, pg. 140-141).
 {¶ 61} Later, the prosecutor stated: "Now, you know, not heinous injuries, but, again, that doesn't matter for the purposes of a robbery. In fact, merely to threaten or attempting to inflict physical harm is sufficient for robbery. In this case, you're going to see that there was actual physical harm." (Transcript, pg. 144-145).
 {¶ 62} In closing argument (Transcript, pg. 331, 332), the prosecutor stated:
 {¶ 63} "This is our robbery. This is our theft offense in which the perpetrator inflicts in the robbery statute that you're going to read — that the judge is going to read to you and provide you in the instructions, robbery means a theft offense. Attempted theft offense. We don't have an attempt. We have a theft. The bar money was stolen. She started that night at 350. It went up from there. She's making change. It's stolen.
 {¶ 64} "The second component is the infliction, attempted infliction, of (sic) threatened infliction of physical harm. And in this case, we're dealing with actual physical harm. Again, door money's stolen, and our inflicting, attempting to inflict, or threatening to inflict physical harm. * * * So I submit to you that we have our theft offense. We have our physical harm, and we have Jarylyd Portis as our principal perpetrator."
 {¶ 65} State v. Colon, 119 Ohio St.3d 204, 2008-Ohio-3749 ("ColonII ") made clear that the holding in Colon I was only prospective and, further, attempted to clarify the holding; the success or *Page 17 
lack of success of this attempt can best be demonstrated by talking to any trial participants or by reviewing subsequent appellate decisions.
 {¶ 66} The Colon II court noted that applying structural-error analysis to a defective indictment "is appropriate only in rare cases, such as Colon I, in which multiple errors at the trial follow the defective indictment." Id. at ¶ 8. "In Colon I, the error in the indictment led to errors that `permeate[d] the trial from beginning to end and put into question the reliability of the trial court in serving its function as a vehicle for determination of guilt or innocence.'" Id. at ¶ 8, quoting Colon I at ¶ 23. Although the court in Colon II assumed "that the facts that led to our opinion in Colon I are unique," id. at ¶ 6, those facts led to the conclusion "that there was no evidence to show that the defendant had notice that recklessness was an element of the crime of robbery, nor was there evidence that the state argued that the defendant's conduct was reckless. Further, the trial court did not include recklessness as an element of the crime when it instructed the jury. In closing argument, the prosecuting attorney treated robbery as a strict-liability offense." Colon II at ¶ 6, citing Colon I at ¶ 30-31.
 {¶ 67} A strict liability statute eliminates the requirement of an intent to commit the crime. Staples v. United States (1994),511 U.S. 600, 114 S.Ct. 1793, 128 L.Ed. 608. As Justice Holmes famously said, "[E]ven a dog distinguishes between being stumbled over and being kicked." Holmes, The Common Law (1881), 3.
 {¶ 68} In State v. Taylor, Montgomery App. No. 22564, 2009-Ohio-806, we found that the prosecutor had not discussed robbery as a strict liability offense, and thus the structural error analysis was not appropriate. However, contrary to Taylor, the prosecutor's statements in Portis' case mirror those that Colon I recognized as a component of structural error by implying that the mere presence *Page 18 
of physical harm suffices to convict. [Colon I: "* * * he attempted to commit a theft offense and he inflicted harm. * * *" Portis: "* * * we have to have a theft offense * * * we have to have some sort of physical harm * * * if we have those elements or alternative elements, we have robbery."]
 {¶ 69} Similarly, in State v. Alvarez, Defiance App. No. 4-08-02,2008-Ohio-5189, the court found that the offense was treated as a strict-liability offense when the prosecutor argued, in part:
 {¶ 70} "And, again, you're going to have the opportunity to review the photographs that are here. There are also stipulated medical reports from Defiance Hospital indicating the severity of the injuries sustained by Mr. Sanders and what transpired and, of course, you heard the testimony of Mr. Sanders and Ms. Sanders and also don't forget Margaret Roddy who told you how bloody he was and I think she characterized it as it looked like somebody out of a horror movie and said that it looked much worse than these photographs taken by the Sheriffs Department because he had gone in an [sic] cleaned himself up. So these pretty nasty pictures in and of themselves but he looked worse than that when she first saw him after he had to walk ten minutes from the wooded area to her house."
 {¶ 71} "The State basically argued that the photographic and medical evidence speaks for itself and was sufficient to find * * * [the defendant] guilty * * *." Id. at ¶ 23.
 {¶ 72} There is no inconsistency in affirming a finding of no plain error, but in reversing on a finding of structural error. For illustration, using one of Colon I `s dissent's examples, a jury instruction that incorrectly defines "reasonable doubt" mandates reversal regardless of whether the evidence and testimony proved guilt beyond even "all possible or imaginary doubt."
 {¶ 73} Many grammarians have objected to the comparison or modification (as by "somewhat" or "very") of "unique", asserting that a thing is either unique or it is not, but with *Page 19 
popular use has come a broadening of application to include "peculiar" or "unusual." The peculiar, unusual or "rare" (Colon I at ¶ 8) facts which Colon I held to constitute structural errors are also present in Portis' case. Stare decisis must govern our decisions and Colon I (which was not overruled, but rather was clarified by Colon II), mandates a finding of structural error and a reversal and remand.
(Hon. William H. Wolff, Jr., retired from the Second District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).
Copies mailed to:
Amy M. Smith David Smith Hon. Douglas M. Rastatter *Page 1