THE STATE OF OHIO, APPELLANT, *v.* PERRY, APPELLEE.

[Cite as *State v. Perry,* 101 Ohio St.3d 118, 2004-Ohio-297.]

(No. 2002–1792—Submitted October 8, 2003—Decided February 11, 2004.)

MOYER, C.J.

{¶ 1} The question presented in this case is whether the failure of the trial court to maintain written jury instructions with the "papers of the case" in violation of R.C. 2945.10(G) is cause for the automatic reversal of a defendant's conviction.

I

{¶ 2} On February 9, 2001, the Franklin County Grand Jury indicted defendant-appellee, Michael L. Perry, for kidnapping, cunnilingus rape, vaginal rape, and gross sexual imposition. Appellee pleaded not guilty and was tried in the

Franklin County Court of Common Pleas. At the conclusion of the trial, the jury found Perry not guilty of vaginal rape but was unable to reach a verdict on the remaining charges. Perry was thereafter retried before a second jury on the charges of kidnapping, cunnilingus rape, and gross sexual imposition. The jury returned a guilty verdict on the first two charges and an acquittal on the third.

{¶ 3} Perry appealed his convictions to the Tenth District Court of Appeals, asserting six assignments of error. In his sixth assignment of error, Perry alleged that "[t]he trial court committed prejudicial error by failing to make written jury instructions provided to the jury a permanent part of the record for use on appeal." The court of appeals, without expressly determining whether such error affected the substantial rights of the defendant, concluded that the failure of the trial court to maintain such instructions with the "papers of the case" was cause for reversal. Having concluded that Perry's sixth assignment of error was dispositive, the court of appeals declared the remaining assignments of error moot and remanded the cause for a new trial.

{¶ 4} On September 16, 2002, the state filed a motion to certify a conflict, arguing that the judgment of the court of appeals conflicted with six decisions from the Eight District Court of Appeals and one decision from the Fifth District Court of Appeals. In its motion, the state argued that these decisions stood for the proposition that a reviewing court may reverse a conviction for failure to preserve the written jury instructions only when such error prejudices the defendant. The Tenth District Court of Appeals concluded that no conflict existed and denied the motion.

{¶ 5} The cause is now before this court upon the allowance of a discretionary appeal.

## II

{¶ 6} The sole issue in this appeal is whether the failure of the trial court to maintain written jury instructions with the "papers of the case" is cause for reversal regardless of whether such error affected the substantial rights of the defendant. In determining whether to reverse a conviction based on an alleged error, our threshold inquiry is "whether there was an 'error'—i.e., a '[d]eviation from a legal rule.'" *State v. Fisher*, 99 Ohio St.3d 127, 2003-Ohio-2761, 789 N.E.2d 222, ¶ 7, quoting *United States v. Olano* (1993), 507 U.S. 725, 732–733, 113 S.Ct. 1770, 123 L.Ed.2d 508. Perry asserts that the trial court deviated from a legal rule set forth in R.C. 2945.10(G) because the court failed to maintain the written jury instructions with the record. R.C. 2945.10(G), which governs the order of proceedings at trial, provides:

{¶ 7} "The court, after the argument is concluded and before proceeding with other business, shall forthwith charge the jury. Such charge shall be reduced to writing by the court if either party requests it before the argument to the jury is commenced. Such charge, or other charge or instruction provided for in this section, when so written and given, shall not be orally qualified, modified, or explained to the jury by the court. *Written charges and instructions shall be taken by the jury in their retirement and returned with their verdict into court and remain on file with the papers of the case.*" (Emphasis added.)

{¶ 8} We conclude that R.C. 2945.10(G) clearly and unambiguously requires the trial court to maintain the written jury instructions with the "papers of the case" and that failure to do so constitutes a "deviation from a legal rule." Given that the trial court's failure to maintain such instructions with the record is error, we therefore consider whether the error is cause for automatic reversal. Our analysis of this issue requires a discussion of the circumstances under which a reviewing court may reverse a conviction based on an error that occurred during the trial court proceeding.

A

{¶ 9} Crim.R. 52 affords appellate courts limited power to correct errors that occurred during the trial court proceeding. Crim.R. 52 provides:

{¶ 10} "(A) Harmless error

{¶ 11} "Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded.

{¶ 12} "(B) Plain error

{¶ 13} "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

{¶ 14} Crim.R. 52(B) thus distinguishes between errors to which a defendant objected at trial and errors that a defendant failed to raise at trial. If the defendant failed to raise an error affecting substantial rights at trial, an appellate court reviews the error under the plain-error standard in Crim.R. 52(B). Under that rule, the *defendant* bears the burden of demonstrating that a plain error affected his substantial rights. See *Olano,* 507 U.S. at 734, 113 S.Ct. 1770, 123 L.Ed.2d 508.[1] Even if the defendant satisfies this burden, an appellate court has discretion to disregard the error and should correct it only to " 'prevent a manifest miscarriage of justice.' " *State v. Barnes* (2002), 94 Ohio St.3d 21, 27, 759 N.E.2d 1240, quoting *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, paragraph three of the syllabus.

---

1. Fed.R.Crim.P. 52 is the analogous counterpart to Ohio's Crim.R. 52.

{¶ 15} Alternatively, if the defendant has objected to an error in the trial court, an appellate court reviews the error under the "harmless error" standard in Crim.R. 52(A)—"a standard significantly more favorable to the defendant." *United States v. Curbelo* (C.A.4, 2003), 343 F.3d 273, 286. Under that rule, the *government* bears the burden of demonstrating that the error did not affect the substantial rights of the defendant. *Olano,* 507 U.S. at 741, 113 S.Ct. 1770, 123 L.Ed.2d 508; *State v. Gross,* 97 Ohio St.3d 121, 2002-Ohio-5524, 776 N.E.2d 1061, ¶ 136 ("Once [the defendant] objected [to the error], the burden shifted to the state to demonstrate an absence of prejudice"). This burden-shifting device "is dictated by a subtle but important difference in language between the two parts of Rule 52: While Rule 52(a) precludes error correction only if the error 'does *not* affect substantial rights,' (emphasis added), Rule 52(b) authorizes no remedy unless the error *does* 'affec[t] substantial rights.' " (Emphasis added.) *Olano,* 507 U.S. at 734–735, 113 S.Ct. 1770, 123 L.Ed.2d 508. An appellate court must reverse a conviction if the government does not satisfy this burden; unlike Crim.R. 52(B), Crim.R. 52(A) is mandatory, not permissive, and thus affords the appellate court no discretion to disregard the error. Id. at 735–736, 113 S.Ct. 1770, 123 L.Ed.2d 508.

{¶ 16} In the instant case, Perry did not object to the failure of the trial court to maintain the written jury instructions with the "papers of the case." Hence, an appellate court would typically review the error under the plain-error analysis in Crim.R. 52(B). Perry asserts, however, that this error should give rise to a *conclusive presumption* that the error affected his substantial rights, thereby requiring an appellate court to correct the error—and thus reverse his conviction—without regard to the evidence in the case. To that end, Perry directs us to the limited class of constitutional defects, called "structural errors," that defy harmless-error analysis and are cause for automatic reversal. We therefore recur to the "substantial body of case law that has delineated the parameters of the structural error doctrine." *Fisher,* 99 Ohio St.3d 127, 2003-Ohio-2761, 789 N.E.2d 222, ¶ 10.

B

{¶ 17} In our most recent pronouncement on the structural-error doctrine, we explained that structural errors are constitutional defects that " 'defy analysis by "harmless error" standards' because they 'affect[ ] the framework within which the trial proceeds, rather than simply [being] an error in the trial process itself.' " *Fisher,* 99 Ohio St.3d 127, 2003-Ohio-2761, 789 N.E.2d 222, ¶ 9, quoting *Arizona v. Fulminante* (1991), 499 U.S. 279, 309 and 310, 111 S.Ct. 1246, 113 L.Ed.2d 302. Such errors permeate "[t]he entire conduct of the trial from beginning to end" so

that the trial cannot " 'reliably serve its function as a vehicle for determination of guilt or innocence.' " *Fulminante,* 499 U.S. at 309 and 310, 111 S.Ct. 1246, 113 L.Ed.2d 302, quoting *Rose v. Clark* (1986), 478 U.S. 570, 577–578, 106 S.Ct. 3101, 92 L.Ed.2d 460. We have thus recognized that if " 'the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other constitutiona[l] errors that may have occurred are subject to harmless-error analysis.' " *State v. Hill* (2001), 92 Ohio St.3d 191, 197, 749 N.E.2d 274, quoting *Rose,* 478 U.S. at 579, 106 S.Ct. 3101, 92 L.Ed.2d 460.

{¶ 18} Consistent with the presumption that errors are not "structural," the United States Supreme Court "ha[s] found an error to be 'structural,' and thus subject to automatic reversal, only in a 'very limited class of cases.' *Johnson v. United States,* 520 U.S. 461, 468, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) (citing *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (complete denial of counsel)); *Tumey v. Ohio,* 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927) (biased trial judge); *Vasquez v. Hillery,* 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986) (racial discrimination in selection of grand jury); *McKaskle v. Wiggins,* 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984) (denial of self-representation at trial); *Waller v. Georgia,* 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984) (denial of public trial); *Sullivan v. Louisiana,* 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) (defective reasonable-doubt instruction)." *Neder v. United States* (1999), 527 U.S. 1, 8, 119 S.Ct. 1827, 144 L.Ed.2d 35.

{¶ 19} Following this federal precedent, we first addressed the explicit argument that an error was "structural" in *State v. Esparza* (1996), 74 Ohio St.3d 660, 660 N.E.2d 1194. In *Esparza,* we considered whether a trial judge committed a structural error when the judge presided over a trial after ruling on a Crim.R. 16(B)(1)(e) motion at an ex parte hearing in which the prosecution argued that one of its witnesses might be harmed if her name and address were disclosed to the defense. In support of its argument, the prosecutor presented evidence of past violence or threats against this witness and others by the defendant and his brother. See *State v. Gillard* (1988), 40 Ohio St.3d 226, 533 N.E.2d 272 (prohibiting a trial judge who had ruled on a Crim.R. 16[B][1][e] motion from presiding over the trial because it created "an unnecessary risk that the judge will harbor a bias against th[e] defendant"). Although we recognized in *Esparza* that such a practice was error, we held that the error was subject to harmless-error analysis under Crim.R. 52(A). In so holding, we concluded that "the trial-error/structural-error distinction is irrelevant unless it is first established that *constitutional* error has occurred. * * * [W]e do not think a violation of the *Gillard* rule is a constitutional error." (Emphasis sic.) *Esparza,* 74 Ohio St.3d at 662, 660 N.E.2d 1194.

{¶ 20} Five years later, we again considered whether an error was structural in *State v. Hill,* 92 Ohio St.3d 191, 749 N.E.2d 274. The issue presented in *Hill* was

whether the use of an anonymous jury, although not objected to at trial, was per se cause for reversal. In holding that the error was not "structural," we cautioned that "[because] the concept behind structural error is that certain errors are so fundamental that they obviate the necessity for a reviewing court to do a harmless-error analysis, * * * it is arguable whether the harmless-error/structural-error distinction discussed in cases such as *Neder* [527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35] (in which an objection was lodged) should also apply to a plain-error case in which no objection was raised at trial." *Hill,* 92 Ohio St.3d at 199, 749 N.E.2d 274. In support of this assertion, we quoted the United States Supreme Court for the proposition that any unwarranted expansion of Crim.R. 52(B) " 'would skew the Rule's "careful balancing of our need to encourage all trial participants to seek a fair and accurate trial the first time around against our insistence that obvious injustice be promptly redressed." ' " Id., quoting *Johnson,* 520 U.S. at 466, 117 S.Ct. 1544, 137 L.Ed.2d 718, in turn quoting *United States v. Young* (1985), 470 U.S. 1, 15, 105 S.Ct. 1038, 84 L.Ed.2d 1.

{¶ 21} Most recently, we addressed the argument that an error was "structural" in *State v. Fisher,* 99 Ohio St.3d 127, 2003-Ohio-2761, 789 N.E.2d 222. The appellant in *Fisher* asserted that the practice of allowing jurors to question witnesses was per se prejudicial. Interpreting the phrase "per se prejudicial" to mean that an error was "structural,"[2] we considered the threshold issue of whether such a practice " 'involves the deprivation of a constitutional right.' " Id. at ¶ 18, quoting *State v. Issa* (2001), 93 Ohio St.3d 49, 74, 752 N.E.2d 904 (Cook, J., concurring). Concluding that "the mere *possibility* that a jury may submit a biased question or engage in premature deliberation does not violate the Ohio or United States Constitution," *Fisher* at ¶ 27, we held that the practice of allowing jurors to question witnesses did not deprive the defendant of a constitutional right and, therefore, was not a structural error. Id. at ¶ 28.

{¶ 22} With deference to these principles, we turn to the instant matter.

### III

{¶ 23} The dispositive inquiry in the case at bar, as discussed in Part II, is whether the failure of the trial court to maintain the written jury instructions

---

2. In *State v. Jackson* (2001), 92 Ohio St.3d 436, 751 N.E.2d 946, we addressed a similar argument that we should presume prejudice when a trial court permits alternate jurors to remain present during jury deliberations in violation of Crim.R. 24(F). Although we made *no reference to the* "structural error" doctrine, we cited *Olano* for the proposition that the failure to comply with Crim.R. 24(F) was not cause for automatic reversal. *Jackson,* 92 Ohio St.3d at 439, 751 N.E.2d 946. See, also, *State v. Gross,* 97 Ohio St.3d 121, 2002-Ohio-5524, 776 N.E.2d 1061, ¶ 33; *State v. Braden,* 98 Ohio St.3d 354, 2003-Ohio-1325, 785 N.E.2d 439, ¶ 49.

with the "papers of the case" is structural error and thus subject to automatic reversal. We emphasize that both this court and the United States Supreme Court have cautioned against applying a structural-error analysis where, as here, the case would be otherwise governed by Crim.R. 52(B) because the defendant did not raise the error in the trial court. See *Hill,* 92 Ohio St.3d at 199, 749 N.E.2d 274; *Johnson,* 520 U.S. at 466, 117 S.Ct. 1544, 137 L.Ed.2d 718. This caution is born of sound policy. For to hold that an error is structural even when the defendant does not bring the error to the attention of the trial court would be to *encourage* defendants to remain silent at trial only later to raise the error on appeal where the conviction would be automatically reversed. We believe that our holdings should foster rather than thwart judicial economy by providing incentives (and not disincentives) for the defendant to raise all errors in the trial court—where, in many cases, such errors can be easily corrected.

{¶ 24} Even assuming that a structural-error analysis may be appropriate in such a case, however, we hold that the failure of the trial court to maintain the written jury instructions is a statutory, rather than constitutional, defect. See *Esparza,* 74 Ohio St.3d at 662, 660 N.E.2d 1194 ("[T]he trial-error/structural-error distinction is irrelevant unless it is first established that a *constitutional* error has occurred"). (Emphasis sic.) The obligation of a trial court to preserve written jury instructions for appeal is established by R.C. 2945.10(G), which allows the court of appeals to inspect for variations between the oral and written instructions that may affect the substantial rights of the defendant. In the instant case, however, defense counsel made no contention—and the record does not otherwise reflect—that the written instructions deviated in any manner from the oral instructions or that counsel was not given the opportunity to review the written instructions before they were submitted to the jury.[3] Indeed, the trial court reporter signed a sworn affidavit that she "transcribed the jury instructions as the trial court read [the oral instructions] * * * and provided the jury with a copy of the jury instruction as recorded in the transcript." The oral jury instructions from which the court reporter transcribed the written instructions are part of the record and were available for review at the appellate court.

{¶ 25} Furthermore, the failure of the trial court to preserve the written jury instructions with the "papers of the case" does not comport with the traditional characteristics of a structural error. The failure to preserve such instructions does not, for example, " 'affect[ ] the framework within which the trial proceeds, rather than simply [being] an error in the trial process itself.' " *Fisher,* 99 Ohio St.3d 127, 2003-Ohio-2761, 789 N.E.2d 222, ¶ 9. Nor does such error permeate

---

3. The record indicates that the trial judge asked whether either party had "[a]ny additions, corrections, [or] deletions" to the jury instructions. Both defense counsel and the prosecution answered in the negative.

"[t]he entire conduct of the trial from beginning to end" so that the criminal trial cannot "reliably serve its function as a vehicle for determination of guilt or innocence." *Fulminante*, 499 U.S. at 309 and 310, 111 S.Ct. 1246, 113 L.Ed.2d 302, quoting *Rose*, 478 U.S. at 577–578, 106 S.Ct. 3101, 92 L.Ed.2d 460. Finally, the instant case does not fall within the "very limited class of cases," *Johnson*, 520 U.S. at 468, 117 S.Ct. 1544, 137 L.Ed.2d 718, that are "so fundamental that they obviate the necessity for a reviewing court to do a [prejudice] analysis." *Hill*, 92 Ohio St.3d at 199, 749 N.E.2d 274. Accordingly, we hold that the failure of the trial court to preserve the written jury instructions with the "papers of the case" is not a structural error.

{¶ 26} For the foregoing reasons, we reverse the judgment of the court of appeals and remand the cause to that court (1) to determine whether the failure of the trial court to maintain written jury instructions with the "papers of the case" is plain error under Crim.R. 52(B) and, if not, (2) to review Perry's remaining assignments of error.

Judgment reversed
and cause remanded.

RESNICK, F.E. SWEENEY, PFEIFER, LUNDBERG STRATTON, O'CONNOR and O'DONNELL, JJ., concur.

---

Ron O'Brien, Franklin County Prosecuting Attorney, and Laura M. Rayce, Assistant Prosecuting Attorney, for appellant.

Joseph E. Scott Co., L.P.A., and Joseph E. Scott, for appellee.

David L. Strait, urging affirmance for amicus curiae Ohio Association of Criminal Defense Lawyers.