OPINION
{¶ 1} Willis E. Brooks, III, defendant-appellant, was charged with one count of burglary, two counts of felonious assault on police officers, and two counts of failure to comply with an order of a police officer. Appellant entered a not guilty plea and, after trial by a jury, was found guilty of one count of burglary, one count of felonious assault on police officers, and two counts of failure to comply with an order of a police officer. Appellant was acquitted of one count of felonious assault.
 {¶ 2} The court sentenced appellant to four years on the burglary count, nine years on the felonious assault count, and two years for one count of failure to comply, ruling that the two counts of failure to comply merged for sentencing purposes. The sentences were ordered to be served consecutively for an aggregate sentence of 15 years.
 {¶ 3} Appellant has appealed asserting the following two assignments of error:
FIRST ASSIGNMENT OF ERROR
THE TRIAL COURT ERRED WHEN IT PERMITTED THE PROSECUTOR, IN CLOSING ARGUMENT, TO IMPROPERLY COMMENT ON DEFENDANT-APPELLANT'S RIGHT NOT TO TESTIFY, THEREBY VIOLATING DEFENDANT-APPELLANT'S RIGHTS UNDER THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND UNDER ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.
SECOND ASSIGNMENT OF ERROR
THE TRIAL COURT ERRED BY FAILING TO PROPERLY ADMONISH THE JURY IN ACCORDANCE WITH OHIO REVISED CODE SECTION 2945.34.
 {¶ 4} The State of Ohio, plaintiff-appellee, presented overwhelming evidence of appellant's guilt of the charges for which he was found guilty. The victim of the crime, Matthew Davis, testified that he left his home for about an hour during the morning of April 25, 2005, and that, when he came home to the unoccupied house, he noticed a red Pontiac Grand Am parked in the parking place where his wife ordinarily parks. His wife was at school during that time. He noticed that the gate to the backyard leading into a backdoor entry to the house was open and that the doorjamb for the entry into the house was busted. He could hear someone in the house. He ran to get the assistance of a neighbor to use her cell phone to call 911 to describe the circumstances. The Upper Arlington Police Department was located nearby and two patrol officers arrived within two to three minutes. The first officer spoke briefly with Davis to verify the information and then the officers set out to apprehend whoever was in the house. At that time, Officer Jerry Hutchinson saw someone enter the red Pontiac and accelerate rapidly toward him. Officer Hutchinson had a rifle which he fired just before he was struck by the automobile. Officer Dan Dougherty saw appellant enter the automobile and what occurred. He was almost struck by the automobile as well. Officer Dougherty positively identified appellant as the only occupant and the one driving the automobile. The car then left, accelerating quickly, and crashed into a parked car. Police discovered later that the shot had severed the gas line and that the car was inoperable.
 {¶ 5} Several police officers saw appellant exit the crashed vehicle and run. They followed him and, a short time later, apprehended him under a bush. The officers involved in the chase positively identified appellant as the individual they apprehended.
 {¶ 6} The police examined the red Pontiac Grand Am and found numerous items in the backseat, including a TV, computer, printer, jewelry box, CDs, Xbox, and a duffle bag that were positively identified to be the property of Davis. In fact, there were stipulations of the parties to this effect. Fingerprints were taken and there was an identification of the left middle finger of appellant from the bottom of the Xbox system. Other fingerprints were not identified in a search through the Ohio automated fingerprint identification system.
 {¶ 7} There was both photographic and oral testimony of Officer Hutchinson's injuries as a result of being stuck by the red Pontiac.
 {¶ 8} Appellant rested without offering testimony.
 {¶ 9} Appellant's first assignment of error is that the prosecutor in closing argument improperly and unconstitutionally commented on appellant's right not to testify.
 {¶ 10} The scenario regarding this assignment of error arose as a result of both the opening statement and argument by defense counsel. In opening statement, defense counsel stated the following:
On the date and time in question, Willis Brooks was a man who had — he had been in trouble before. He had been to prison. When you come out of prison, it's hard for him to find a job; and he's living by the kindness of others, girlfriend. It's not a good way for him to live. And his — the evidence is going to show, because Mr. Brooks is going to testify — he'll tell you about it — that it didn't feel very good under the circumstances, and he wanted to be able to help out in some way.
Now, the evidence is not going to show a burglary to help out, but he's talking to some friends about this situation. And another individual comes along and says, "Hey, I'm getting ready to move. I need some help moving. And I can talk to you about some of the items that I don't need anymore because I'm moving."
Willis agrees to go along and supposedly to this friend's house. He's never been there before. He doesn't know him other than he's with other people on the street.
Willis does not go in the house. This other person has gone in and is carrying goods back out to the car. And Willis is, you know, helping put the items in the car.
Suddenly this other fellow comes running out of the house, jumps in the car and takes off. Willis is a little confused, but he's now figuring there's something that's not going right around here. Something's not right. And then, of course, there's gunshots.
Willis is a man with a record. He's a man of color. He's in Arlington. There's shots being fired, and there's obviously trouble going on. He doesn't stick around. He runs, and he hides. And the issue for you is going to be whether or not the evidence here shows beyond a reasonable doubt that Willis is driving this vehicle, whether he had any intent to burglarize this structure at the time this fiasco began.
(Tr. at 21-23.)
 {¶ 11} In addition, defense counsel raised this issue regarding appellant helping someone else, without the benefit of any evidence supporting that opening statement, when he stated the following:
Who were the police looking for when they locked down the schools and when they go searching for this other suspect? Willis Brooks is a black man who has gotten into a situation where he knows it's not going to look good for him. He's trying to help somebody.
(Tr. at 301.) At this point, the prosecutor objected because of the assumed facts not in evidence and the objection was sustained. Defense counsel then stated the following:
He's — he's hiding. He's running. Under similar circumstances, you might as well. If you find Willis Brooks guilty, this other man doesn't go away. He doesn't disappear. And his existence can return to haunt everybody of a possible injustice with regard to Willis Brooks. The decision is going to be up to you.
(Tr. at 301.)
 {¶ 12} In the prosecutor's rebuttal evidence he stated as follows: "Defendant's there helping someone move. I didn't hear any testimony that the defendant was there helping somebody move. Not quite sure where [defense counsel] got that." (Tr. at 303.) There was no objection to the prosecutor's statement.
 {¶ 13} "The test for prosecutorial misconduct is whether [the prosecutor's] remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused." Statev. Smith (2000), 87 Ohio St.3d 424, 442. Even though the prosecutor's conduct is found to be improper, to determine whether it constituted a denial of due process, "[w]e consider the effect the misconduct had on the jury in the context of the entire trial." Steve v. Keenan (1993), 66 Ohio St.3d 402, 410. Prosecutorial misconduct does not constitute reversible error unless it deprives the defendant of a fair trial. "A conviction will be reversed only where it is clear beyond a reasonable doubt that, absent the prosecutor's comments, the jury would not have found appellant guilty." State v. Benge (1996), 75 Ohio St.3d 136,141, citing State v. Loza (1994), 71 Ohio St.3d 61, 78. In this case, we find no error, plain or otherwise. Regarding the context of the entire trial, appellant sought to raise an issue of innocence through the alleged involvement of a third unidentified person primarily through opening statement and closing argument. The only evidence that might indicate the presence of a third person is the unidentified fingerprints found on the stolen merchandise. Appellant's story is opposed by overwhelming evidence of appellant being the sole person in the automobile that struck one police officer and attempted to strike another officer. Appellant ran from the scene and was clearly identified as the only person found at the scene.
 {¶ 14} Even if there was some constitutional infirmity, since no objection was made to the statement of the prosecutor, which was only in response to appellant's improper argument, the error did not constitute plain error because the requirement of plain error is that appellant must show the result of the trial would have been different had the jury received the admonishments. There appears to be no likelihood that this one brief statement of the prosecutor, triggered by defense counsel's statements, had any effect whatsoever on the result of the trial.
 {¶ 15} Additionally, we note that the statement made by the prosecutor in regard to there being no evidence was not specifically directed at appellant's failure to testify. Instead, it was a statement noting the defense's failure to offer any evidence supporting his theory of the case as the Ohio Supreme Court stated in State v. Williams (1986), 23 Ohio St.3d 16. "A reference by the prosecutor in closing argument to uncontradicted evidence is not a comment on the accused's failure to testify, where the comment is directed to the strength of the state's evidence and not to the silence of the accused, and where the jury is instructed, as here, to not consider the accused's failure to testify." Id., at 19-20. As in Williams, the prosecutor in this case commented on the lack of evidence supporting appellant's theory of the case and, as in Williams,
the trial court in this case instructed the jury "[i]t is not necessary that the defendant take the witness stand in his own defense. The defendant has a constitutional right not to testify. The fact that the defendant did not testify must not be considered for any purpose." (Tr. at 311.)
 {¶ 16} Appellant's first assignment of error is overruled.
 {¶ 17} In appellant's second assignment of error he asserts that the trial court failed to comply with the cautionary instructions contained in R.C. 2945.34 so that the jury would be impressed about the importance of deciding the case solely upon the evidence and the confines of the jury room.
 {¶ 18} R.C. 2945.34 provides as follows:
If the jurors are permitted to separate during a trial, they shall be admonished by the court not to converse with, nor permit themselves to be addressed by any person, nor to listen to any conversation on the subject of the trial, nor form or express any opinion thereon, until the case is finally submitted to them.
Appellant concedes that the trial court's first admonishment, although not precisely in accordance with this statutory language, was probably sufficient. We agree that it was, particularly in light of the fact that defense counsel made no objection at that point or at any other point, and the cautionary instruction was repeated or supplemented later, sometimes in short form.
 {¶ 19} After opening statements, the trial court stated to the jury the following:
At this point you know nothing about the case really, but I must admonish you not to discuss the case. Don't investigate anything. Don't even talk about it at home. If anyone attempts to talk to you about the case, you must report that to the court immediately.
If the attorneys ignore you in the lobby and refuse to get on the elevator with you, they're not trying to be rude. They're doing what they're supposed to do.
(Tr. at 11.)
 {¶ 20} After the first day of trial, the court declared a recess from Friday to Monday morning at 9:00 a.m., and stated: "Again, do not discuss the case. Report to the court if you — if anyone attempts to discuss the case with you." (Tr. at 123.) Later, on several occasions, the trial court simply reminded the jury to not discuss the case or form or express any opinion even to each other. On a couple occasions there was a recess where no additional instruction was given.
 {¶ 21} At no time during the trial did defense counsel suggest that the cautionary instructions were inadequate. The first time this issue was raised was at the appeal level.
 {¶ 22} The complained of omissions are not "structural error" requiring an automatic finding of prejudice. See Neder v.United States (1999), 527 U.S. 1, 8-11. A "structural error" analysis would be inapplicable here anyway since the claimed error was waived by a failure to object. A "structural error" analysis only supplies an automatic finding of prejudice for preserved errors thereby avoiding harmless error analysis. It does not supply an automatic finding of plain error for unpreserved errors. Statev. Rector, Carroll App. No. 01AP-758, 2003-Ohio-5438.
 {¶ 23} The Ohio Supreme Court pertinently addressed when structural error analysis should be used in State v. Perry,101 Ohio St.3d 118, 2004-Ohio-297:
* * * For to hold that an error is structural even when the defendant does not bring the error to the attention of the trial court would be to encourage defendants to remain silent at trial only later to raise the error on appeal where the conviction would be automatically reversed. We believe that our holdings should foster rather than thwart judicial economy by providing incentives (and not disincentives) for the defendant to raise all errors in the trial court — where, in many cases, such errors can be easily corrected.
(Emphasis sic.) Id., at ¶ 23.
 {¶ 24} Appellant's second assignment of error is overruled.
 {¶ 25} Appellant's two assignments are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
Brown and French, JJ., concur.
McCORMAC, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.