[Cite as *State v. Perchinske*, 2012-Ohio-1704.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES: |
| | Hon. Patricia A. Delaney, P. J. |
| Plaintiff-Appellee | Hon. John W. Wise, J. |
| | Hon. Julie A. Edwards, J. |
| -vs- | |
| | Case No. 2011 CA 00144 |
| JOSEPH PERCHINSKE | |
| | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:      Criminal Appeal from the Canton Municipal
                             Court, Case No.  2011 CRB 01662


JUDGMENT:                    Affirmed


DATE OF JUDGMENT ENTRY:      April 16, 2012


APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

JOSEPH MARTUCCIO                          PATRICK L. CUSMA
CANTON LAW DEPARTMENT                     116 Cleveland Avenue NW
TYRONE D. HAURITZ                         Suite 808
CANTON CITY PROSECUTOR                    Canton, Ohio  44702
TASHA FORCHIONE
ASSISTANT PROSECUTOR
218 Cleveland Avenue, SW
Post Office Box 24218
Canton, Ohio  44701-4218

*Wise, J.*

**{¶1}** Appellant Joseph Perchinske appeals his sentence and conviction entered in the Canton Municipal Court on one count of domestic violence.

**{¶2}** Appellee is the State of Ohio.

### STATEMENT OF THE FACTS AND CASE

**{¶3}** On May 10, 2011, Appellant was arrested, and charged on May 11, 2011, with first degree Domestic Violence pursuant to R.C. §2919.25.

**{¶4}** On May 11, 2011, Appellant was arraigned and pled not guilty,

**{¶5}** On June 20, 2011, a jury trial commenced in this matter.

**{¶6}** Prior to *voir dire*, Appellant's counsel made a Motion *in Limine*. In said Motion, Appellant's counsel made the following request:

**{¶7}** "I would also ask that the State witnesses be prohibited - be instructed to - to be prohibited from any mention, reference or testimony in regard to the defendant's prior substance abuse. I understand that the prosecutor has some intention of introducing evidence about current drug use as it relates to the fight at issue, but I would just ask that if the Court is inclined to allow that testimony, that the- any testimony of him having a prior drug problem or anything about prior relationships in regard to drug problems be prohibited. (T. Vol. I at 8).

**{¶8}** In response, the State requested leave to reference Appellant's substance abuse as it related to the argument which took place on May 10th, 2011. (T. Vol. I at 8).

**{¶9}** The trial court permitted the State to question the complaining witness about what she and Appellant argued about on May 10, 2011. (T. Vol. I at 9). The trial court, however, granted the Motion *in Limine* regarding prior substance abuse. *Id*.

**{¶10}** During *voir dire,* the assistant prosecutor informed the jury that "there may be some evidence today that there was an argument regarding drug usage." (T. Vol. I at 28). The prosecutor then asked the potential jurors "is there anybody out there today who thinks that consuming drugs or alcohol should excuse you from your behavior?" (T. Vol. I at 28).

**{¶11}** Appellant's trial counsel raised no objection.

**{¶12}** In response to this question, Juror Twenty-Three stated:

**{¶13}** "I don't - I - I think people use alcohol and drugs for an excuse to do what they want - actually what they want to do. I don't think it's right, they use it for an excuse." (T. Vol. I at 29). No other jurors responded in the affirmative at that time.

**{¶14}** The prosecutor then asked the prospective jurors whether they thought that the State should proceed with a case when a victim is not cooperative. (T. Vol. I at 29-31).

**{¶15}** Juror Twenty-Nine responded in the affirmative, explaining that her niece was accused of a crime and the State dropped charges based on the victim's request. (T. Vol. I at 32). She went on to state that she "thought it was fair because there were drugs and alcohol involved," but also stated, "I don't know - you know what I mean - if it was the best thing for her or not in the end." (T. Vol. I at 32). The trial court then took Juror Twenty-Nine into chambers where she further explained that her niece had substance abuse and mental health problems and that in her niece's case, the State dropped the charges on the condition that the defendant seek treatment. (T. Vol. I at 33-34).

{¶16} Appellant's trial counsel asked juror twenty-nine whether she was open to hearing that allegations of substance abuse were untrue. (T. Vol. I at 36). Juror twenty-nine responded, "Well, I haven't made a decision on him, no. So, you know, I mean, I guess I would be open to hearing the facts about what we think why he did use or didn't- you know, I mean, yes, I could be open to hearing that. I think I'm fair." Id.

{¶17} The parties returned to open court and the prosecutor asked the prospective jurors whether anyone has either been a victim or knew a victim of domestic violence. (T. Vol. I at 37). Juror twenty-three responded in the affirmative and stated that she was a victim of domestic violence. Upon further inquiry, juror twenty-three stated, "It's my ex-husband. He's deceased now. He used drugs and alcohol, and he'd go out and get drunk, come home and beat me while I was sleeping." Id.

{¶18} The trial court then took juror twenty-three in chambers where she explained her situation, and stated:

{¶19} "I thought I could change him because I worked and then it seemed like the more I worked the more he did drugs and the alcohol, and then it started getting abusive and I just divorced him and then he got sick." (T. Vol. I at 40).

{¶20} The prosecutor asked juror twenty-three whether she would be comfortable if selected to serve on this jury, and she replied:

{¶21} "I mean it's been sixteen years, so I mean it's not that I hold grudges against anybody or have any animosity or anything, you know. I just don't think drugs or alcohol is an excuse for people to do what they're doing. Because they know. They know right from wrong." (T. Vol. I at 41).

{¶22} Appellant's trial counsel asked a series of questions including, "Are you open to the idea that this person might not be using substances as well? Are you open - have you already made your decision? Do you think you can make a decision based upon the evidence in the courtroom ... and not on any [past history]. (T. Vol. I at. 41-42).

{¶23} Juror twenty-three answered "Yes." (T. Vol. I at 42-43).

{¶24} In open court, the prosecutor then asked whether anyone in the audience was a victim of any other crime. Juror forty-three, among others, had positive responses. (T. Vol. I at 55-56).

{¶25} Juror forty-three stated that she was a victim of identity theft, and the perpetrator was a family member. (T. Vol. I at 56). Upon taking juror forty-three into chambers, juror forty-three explained that her daughter was involved with a man, and the two of them engaged in identity fraud. (T. Vol. I at 57). Juror forty-three stated several times that she wanted her daughter to go to rehab in lieu of jail. (T. Vol. I at 57-60). Additionally, juror forty-three expressed concerns about domestic violence and substance abuse. She stated:

{¶26} "I think about how he treated her and, urn, there might have been domes-, domestic violence, you know, but she didn't tell me about it. And it could have been. I mean the way he was, you know, the drugs and the drinking." (T. Vol. I at 61).

{¶27} The trial court asked juror forty-three whether she could be fair and impartial and she stated:

{¶28} "I could have an open mind, but I I'm not sure, you know? Because of what happened. It was such- and it took a long time for everybody to get situated, you

know, especially my daughter and- but he's still like that, you know. You know? He's- he hasn't changed, and you know, that is in the back of my mind." (T. Vol. I at 61-62).

**{¶29}** The parties returned to open court, and *voir dire* continued. The prosecutor asked the prospective jurors whether there was anything in their background or history that may disqualify them for jury service. (T. Vol. I at 77). Juror forty-five answered affirmatively, stating:

**{¶30}** "I have a daughter and I just believe that, you know, if a man is going to hit a woman, that you don't do that."

**{¶31}** "You gonna- you gonna hit a woman I say you're a coward and no matter what (word inaudible), so just by looking and seeing him, I would convict him." (T. Vol. I at 78).

**{¶32}** Appellant's trial counsel followed up, and asked:

**{¶33}** "…Is there anybody else who feels like that?  Is there anybody else who says "You know, take one look at somebody and the charge that they're facing, it's just too much for me to handle" …?"

**{¶34}** Juror eighteen had a positive response, and went in chambers. Outside of the presence of other jurors, juror eighteen stated:

**{¶35}** "Um, I guess in my opinion I've seen a lot of this before with the job profession I've done. I no longer do that but I, you know, I feel that I'm a good upstanding citizen. I work two full time jobs and I go to school full time and the very fact that I'm here because of some guy accusidly [sic] couldn't handle his alcohol or drugs pisses me off, the fact that he hit a woman. Whether he is guilty or not guilty, just the whole point of the job that I have had and seeing people deal with alcohol, just - this -

the whole thing irritates me. And I – I don't believe that there's any reason whatsoever, alcohol or drugs, whatever, why he should hit a woman. So, I mean I guess I'm just more on the point of, you know, for -for you know, I guess excuse the way that I put it but for somebody to hit a woman and me have to sit here and listen to that, it just- it irritates me. (T. Vol. I at 80-81).

**{¶36}** However, upon further questioning, juror eighteen stated that he had "more or less" prejudged the Appellant and that he also thought he may have seen him in some of the bars where he had worked. (T. Vol. I at 82).

**{¶37}** *Voir Dire* continued, and the trial court questioned juror twenty-eight regarding her position as a GED teacher at Day Reporting for the Common Pleas Court. (T. Vol. I at 84). Juror twenty-eight explained, in chambers, that she is trained to be non judgmental and would concern herself with punishment if selected as a juror. (T. Vol. I at 86).

**{¶38}** At this point, Appellant's trial counsel expressed a concern regarding the number of references to substance abuse, and argued that he believed the jury "has been completely swayed and tainted by that line of questioning." (T. Vol. I at 87). Trial counsel then moved for a mistrial. (T. Vol. I at 88).

**{¶39}** The trial court overruled the motion, noting that the State asked a "fact specific" question, to which trial counsel did object. (T. Vol. I at 88).

**{¶40}** Appellant's counsel also moved for a mistrial on the grounds that two people "expressed very strong opinions on domestic violence in front of other jurors" and expressed her concern that only a "handful" of jurors would remain after challenges

for cause. (T. Vol. I at 89). The court overruled counsel's second motion as premature. *Id.*

**{¶41}** Trial counsel completed *voir dire,* and the parties selected a jury. The State challenged jurors fourteen, twenty-nine, and twenty-eight for cause. (T. Vol. I at 105). Appellant challenged jurors eighteen, twenty-three, and forty-five for cause. (T. Vol. I at 106-108). The court dismissed all six jurors. (T. Vol. I at 105-108).

**{¶42}** Jurors twenty-seven, forty-three, thirty-eight, twenty-six A, forty-six A, and twenty-five were dismissed based on peremptory challenges. (T. Vol. I at 110-111). The final jury included jurors five A, six, twelve, nineteen, twenty-one, twenty-one A, twenty-four, thirty-one, and forty (alternate). (T. Vol. I at 114).

**{¶43}** Appellant's trial counsel renewed his motion for mistrial based on "strong opinions" of prospective jurors, which the trial court overruled. (T. Vol. I at 113).

**{¶44}** The trial court empaneled a jury and instructed the jurors not to "be influenced in your decision by sympathy, prejudice or passion toward any party, witness, or attorney in this case." (T. Vol. I. at 116).

**{¶45}** Additionally, the trial court advised the jurors that they must "decide this case based solely on the evidence that is presented to you in this courtroom." (T. Vol. I at 117).

**{¶46}** The trial then proceeded with opening statements. During the State's opening, the prosecutor referenced police interviews with both the victim and appellant. In particular, the prosecutor stated:

**{¶47}** "When the police arrived at the home, they did speak to both the victim and the defendant in this case. They got some information about what happened. The

victim told her version of events and the defendant of course gave a different version of events." (T. Vol. I at 126).

**{¶48}** Appellant's trial counsel objected, and moved again for a mistrial in chambers, arguing that the State's reference to police interviews improperly referenced Appellant's constitutional right not to incriminate himself. (T. Vol. I at 126-127). The State argued that the statement was admissible under Evid.R. 801(0)(2). *Id.* The trial court overruled said motion. (T. Vol. I at 127).

**{¶49}** The trial proceeded, with the State calling the victim Megan Kennard, a neighbor Penelope Peters, Officer Tim Marks, 9-1-1 Operator Debbie Runyon and Detective Jeff Weller.

**{¶50}** Appellant presented no evidence.

**{¶51}** Following deliberations, the jury found Appellant guilty.

**{¶52}** By Judgment Entry filed June 21, 2011, the trial court sentenced Appellant to 180 days in the Stark County Jail, with all but 90 days suspended. Appellant was credited with two (2) days of jail time. Appellant was also ordered to complete Melymbrosia/Voyager and was placed on direct probation for 2 years.

**{¶53}** Appellant now appeals, assigning the following errors for review:

## ASSIGNMENTS OF ERROR

**{¶54}** "I. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN NOT GRANTING DEFENDANT'S MOTIONS FOR MISTRIAL.

**{¶55}** "II. APPELLANT'S COUNSEL'S FAILURE TO OBJECT TO THE DRUG-ALCOHOL QUESTION DURING VOIR DIRE CONSTITUTED INEFFECTIVE ASSISTANCE OF COUNSEL.

**{¶56}** "III. THE TRIAL COURT COMMITTED PLAIN ERROR IN NOT DECLARING A MISTRIAL.

**{¶57}** "IV. THE CUMULATIVE EFFECTS OF ERRORS IN THE TRIAL DENIED APPELLANT A FAIR TRIAL"

**I., III.**

**{¶58}** We shall address Appellant's first and third Assignments of Error simultaneously as Appellant contends in both assignments that the trial court erred in not granting a mistrial in this matter.

**{¶59}** Specifically, Appellant argues that the trial court should have granted a mistrial based on the prosecutor's questions to the jury panel during *voir dire* as to whether drug or alcohol use should serve as an excuse for a person's behavior.

**{¶60}** Initially, we note that Appellant's counsel failed to object to such question during voir dire. Accordingly, Appellant has waived all but plain error. *State v. Wooten,* Stark App. No. 2008 CA 00103, 2009-Ohio-1863 at ¶ 38. (Citing *State v. McKnight,* 1007 Ohio St.3d 101, 2005-Ohio-6046 at ¶ 185).

**{¶61}** In criminal cases where an objection is not raised at the trial court level, "plain error" is governed by Crim.R. 52(B), which states, "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." An alleged error "does not constitute a plain error ... unless, but for the error, the outcome of the trial clearly would have been otherwise." *State v. Long* (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph two of the syllabus.

**{¶62}** As the United States Supreme Court recently observed in *Puckett v. United States* (2009), --- U.S. ----, ----, 129 S.Ct. 1423, 1428, 173 L.Ed.2d 266, "If an

error is not properly preserved, appellate-court authority to remedy the error (by reversing the judgment, for example, or ordering a new trial) is strictly circumscribed. There is good reason for this; 'anyone familiar with the work of courts understands that errors are a constant in the trial process, that most do not much matter, and that a reflexive inclination by appellate courts to reverse because of unpreserved error would be fatal.' " (Citation omitted).

{¶63} "[A]n appellate court may, in its discretion, correct an error not raised at trial only where the appellant demonstrates that (1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *United States v. Marcus* (May 24, 2010), 560 U.S. ----, 130 S.Ct. 2159, 176 L.Ed.2d 1012, 2010 WL 2025203 at 4. (Internal quotation marks and citations omitted).

{¶64} The defendant bears the burden of demonstrating that a plain error affected his substantial rights. *United States v. Olano* (1993), 507 U.S. at 725,734, 113 S.Ct. 1770; *State v. Perry* (2004), 101 Ohio St.3d 118, 120 802 N.E.2d 643, 646. Even if the defendant satisfies this burden, an appellate court has discretion to disregard the error. *State v. Barnes* (2002), 94 Ohio St.3d 21, 27, 759 N.E.2d 1240; *State v. Long* (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus; *Perry, supra*, at 118, 802 N.E.2d at 646.

**{¶65}** Appellant herein argues that the prosecutor's question amounted to prosecutorial misconduct because the prosecutor never produced any evidence to support the question, thereby tainting the jury.

**{¶66}** Upon review, we find that aside from Appellant's assertion that the jury was tainted, Appellant has failed to demonstrate that the outcome of the trial would have been different if the prosecutor had not asked such question.

**{¶67}** Further, the jurors who had affirmative responses were all dismissed and no evidence was presented to show that the jurors who were empaneled were not impartial or were tainted by the responses of those dismissed jurors.

**{¶68}** Appellant's first and third Assignments of Error are overruled.

**II.**

**{¶69}** Appellant, in his second Assignment of Error, argues that his trial counsel was ineffective in not objecting to the drug/alcohol question during *voir dire*. We disagree.

**{¶70}** "The standard of review of an ineffective-assistance-of-counsel claim is well established. Pursuant to *Strickland v. Washington* (1984), 466 U.S. 668, 687, in order to prevail on such a claim, the appellant must demonstrate both (1) deficient performance and (2) resulting prejudice, i.e., errors on the part of counsel of a nature so serious that there exists a reasonable probability that in the absence of those errors, the result of the trial court would have been different. *State v. Bradley* (1989), 42 Ohio St.3d 136." *State v. Turner,* 168 Ohio App.3d 176, 2006-Ohio-3786, ¶ 26.

**{¶71}** Here, Appellant argues that counsel was ineffective in not objecting to the prosecutor's question during *voir dire* regarding drug/alcohol use. In support, Appellant

offers that the trial court indicated that it may have granted an objection had it been made at the appropriate time. (T. at 88-89).

{¶72} Upon review under the first prong of the *Strickland* analysis, we do not find that Appellant's trial counsel fell below an objective standard of reasonableness. Appellant's counsel made a motion *in limine* to prevent any references to Appellant's prior drug and/or alcohol use, which was granted. Further, Appellant's counsel made four motions for mistrial based on "strong opinions" expressed by the jurors during voir dire.

{¶73} Further, as set forth in our analysis above, Appellant has failed to demonstrate that the outcome of the trial in this matter would have been different had counsel objected to this question.

{¶74} Appellant's third Assignment of Error is overruled.

## IV.

{¶75} In his final Assignment of Error, Appellant argues that the cumulative effect of errors denied him a fair trial. We disagree.

{¶76} In *State v. Brown,* 100 Ohio St.3d 51, 2003–Ohio–5059, 796 N.E.2d 506, the Ohio Supreme Court recognized the doctrine of cumulative error. However, as explained in *State v. Bethel,* 110 Ohio St.3d 416, 2006–Ohio–4853, 854 N.E.2d 150, ¶ 197, it is simply not enough to intone the phrase "cumulative error." *State v. Sapp,* 105 Ohio St.3d 104, 2004-Ohio-7008, 822 N.E.2d 1239, ¶ 103.

{¶77} Where we have found that the trial court did not err, as we have in the case sub judice, cumulative error is simply inapplicable. *State v. Carter,* 5th Dist. No. 2002CA00125, 2003-Ohio-1313 at ¶ 37.

**{¶78}** Appellant's fourth Assignment of Error is overruled.

**{¶79}** For the foregoing reasons, the judgment of the Canton Municipal Court, Stark County, Ohio, is affirmed.


By: Wise, J.

Delaney, P. J., and

Edwards, J., concur.


_____

_____

_____

JUDGES

JWW/d 0327

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


STATE OF OHIO                            :
                                         :
    Plaintiff-Appellee                 :
                                         :
-vs-                                     :            JUDGMENT ENTRY
                                         :
JOSEPH PERCHINSKE                        :
                                         :
    Defendant-Appellant                :            Case No. 2011 CA 00144


For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Canton Municipal Court, Stark County, Ohio, is affirmed.

Costs assessed to Appellant.


                            _____


                            _____


                            _____

                                   JUDGES