[Cite as *State v. Denson*, 2023-Ohio-847.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-220208 |
| | | TRIAL NO. B-2004292 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| DAVID LEE DENSON, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: March 17, 2023

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, for Plaintiff-Appellee,

*Michael J. Trapp*, for Defendant-Appellant.

**ZAYAS, Judge.**

{¶1}   David Lee Denson appeals his conviction, after a jury trial, for gross sexual imposition.   In two assignments of error, Denson argues that his equal-protection rights were violated by the state's peremptory challenge against an African-American juror, and his due-process rights were violated when the trial court allowed testimony from three witnesses that supported the veracity of a child witness.  For the following reasons, we affirm the trial court's judgment.

## Factual Background

{¶2}   The state indicted David Lee Denson on one count of gross sexual imposition, alleging sexual contact with S.P., who was less than 13 years old at the time.  Denson pleaded not guilty and proceeded to a jury trial.

{¶3}   During voir dire, the prosecutor explained that the evidence consisted primarily of the testimony of a child without any physical evidence.   Several discussions occurred as to whether the potential jurors were comfortable finding a person guilty based solely on witness testimony.  By the end of voir dire, three jurors were excused for cause because they expressed an unwillingness to find a person guilty based solely on witness testimony.   Juror 2 explained that she could not judge truthfulness based solely on testimony without physical evidence.  Juror 23 explained that he could not convict without physical evidence, and Juror 25 expressed a need to have physical evidence in addition to testimony.

{¶4}   Juror 16, who was a daycare worker, stated that she would need more details from a child witness and would want to question the child because she has seen children lie.  She did not want to be "one-sided" by only hearing the minor's testimony. The state excluded Juror 16 with its second peremptory challenge.

**{¶5}** Juror 22, who was asked his thoughts on hearing testimony as the main form of evidence, responded, "That is tough because it is their word against the other person's." He further stated that he believed he could render a guilty verdict based solely on testimony. When questioned by defense counsel as to whether he could be fair and impartial, he responded, "I think so. I think the only difficult thing for me is seeing another person of color, you know, on the defense side of it. Choose between that and calling a young child a liar-I think that's – that would be hard."

**{¶6}** The state peremptorily challenged prospective Juror 22, and defense counsel made a *Batson* challenge because the potential juror "specifically referenced that Mr. Denson was a fellow person of color, and he is only one of two African-American jurors." The prosecutor provided the following reason for the challenge: "Your Honor, basically in my questioning I asked him about whether or not he would be able to convict based on testimony evidence alone. He seemed somewhat hesitant, and it gives us cause to believe that he would want, like some of the other jurors that have already been excused, additional evidence that may not exist in this case." Without giving defense counsel an opportunity to respond, the trial court overruled the *Batson* challenge.

**{¶7}** During the trial, great-aunt testified that she regularly babysat her great-niece S.P. while her mother was at work. S.P. would arrive at 9:30 p.m., and mother would pick her up the next morning between 7:00 a.m. and 7:30 a.m. At that time, great-aunt's boyfriend, David Denson, lived with her. On the night in question, great-aunt fell asleep on the couch around 10:00 p.m. When she awoke and went to her bedroom, Denson and S.P. were in the living room watching TV. When great-aunt woke up in the morning, S.P. was asleep on her bedroom floor. Great-aunt was

awakened after mother arrived to pick up S.P. Mother was screaming and confronting Denson.

**{¶8}** Mother testified that she retrieved her daughter the next morning and was driving her to school when her daughter disclosed an incident that happened the previous night. Mother immediately returned to great-aunt's home and confronted Denson. Mother told great-aunt that Denson made her daughter "touch his dick."

**{¶9}** S.P. testified that after her great-aunt went to bed, she was in the living room watching TV. Her great-aunt's boyfriend took out his privates and told her to rub it with her hands. Denson grabbed her hands and showed her how to do it. He also put some lotion on her hands. S.P. demonstrated how she was told to move her hands up and down. She further testified that his privates got hard when she rubbed him. After she stopped, Denson told her not tell anyone. When S.P. was in the car with her mother, she told her mother what had happened.

**{¶10}** Detective Dana Jones testified that she investigates sexual-abuse crimes against children for the Cincinnati Police Department. Jones interviewed mother and S.P. about the allegations. Jones testified that the disclosures S.P. made to her mother, the responding officer, and to her were consistent. Jones further testified that the victim was able to demonstrate how Denson made her touch him, which "lead to her credibility as a child."

**{¶11}** The jury found Denson guilty, and the court sentenced him to five years of incarceration.

### Peremptory Challenge

**{¶12}** In his first assignment of error, Denson contends that the trial court erred by permitting the state to exercise a peremptory challenge to strike a prospective juror on the basis of his race, in violation of the Equal Protection Clause of the

4

Fourteenth Amendment to the United States Constitution.

**{¶13}** "The Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." *Batson v. Kentucky*, 476 U.S. 79, 89, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). "The Constitution forbids striking even a single prospective juror for a discriminatory purpose." *Flowers v. Mississippi*, ___ U.S. ___, 139 S.Ct. 2228, 2244, 204 L.Ed.2d 638 (2019).

**{¶14}** *Batson* established a three-step process for evaluating claims of racial discrimination. *Id.* at 2241. First, the defendant must establish a prima facie case of discrimination, and if this burden is satisfied, the state must provide race-neutral reasons for its peremptory strikes. *Id.* at 2241. Third, the trial court must determine whether the defendant has proven the prosecutor's stated reasons were the actual reasons or instead were a pretext for discrimination. *Id.*

**{¶15}** "The court must 'assess the plausibility of' the prosecutor's reason for striking the juror 'in light of all evidence with a bearing on it.' " *State v. Garrett*, Slip Opinion No. 2022-Ohio-4218, ¶ 69, quoting *Miller-El v. Dretke*, 545 U.S. 231, 252, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005). "Relevant factors may include 'the prosecutor's demeanor; by how reasonable, or how improbable, the explanations are; and by whether the proffered rationale has some basis in accepted trial strategy." *Id.*, quoting *Miller-El v. Cockrell*, 537 U.S. 322, 339, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003).

**{¶16}** Since peremptory challenges often involve a juror's demeanor, the trial court's observations are of great importance in evaluating credibility. *Id.* at ¶ 70. We defer to the trial court's finding, and a finding of no discrimination will not be reversed

unless it is clearly erroneous. *Id.*

{¶17} At trial, the prosecutor told the trial court that he removed Juror 22 because he seemed somewhat hesitant to convict based on testimonial evidence alone, the same reason that other jurors had been excused. This is a race-neutral explanation. Denson argues that the state's race-neutral explanation was a pretext to strike an African-American juror who expressed support of Denson because of their shared race. Thus the question is whether the state did, in fact, have a discriminatory motive for striking the juror.

{¶18} First, we defer to the trial court's finding because it is based on an evaluation of credibility regarding the juror's hesitancy to commit to convicting based on testimony alone. Reviewing the record, the facts support the state's explanation. Juror 22 admitted that it would be difficult for him to convict based on testimony alone and hard to be fair and impartial, especially because the case involved a black defendant. A guilty verdict would require choosing between a black defendant and "calling a young child a liar," which would be difficult for him.

{¶19} Additionally, the state used a peremptory challenge on Juror 16, a white, female juror who was also hesitant to accept the testimony of a child without the ability to question the child or hear additional evidence. Three additional white jurors were excluded for cause because they would require more than just testimony to find a person guilty.

{¶20} On this record, we cannot conclude that the trial court's determination that Denson failed to establish that the prosecutor had a discriminatory motive for striking the juror was clearly erroneous.

{¶21} Accordingly, we overrule the first assignment of error.

### Witnesses Testimony

{¶22} In his second assignment of error, Denson asserts that the trial court deprived him of due process by allowing testimony from three witnesses that supported the veracity of the child witness. Specifically, Denson argues that the testimony of great-aunt, mother, and Jones improperly bolstered the victim's credibility.

{¶23} Denson challenges the following testimony of great-aunt and mother:

Prosecutor:   Now, you've known [the victim] obviously her whole life?

Great-aunt:   Mm-hmm.

Prosecutor:   Have you ever known her to lie?

Great-aunt:   No, never.

Prosecutor:   To your knowledge, has she ever told you a lie?

Great-aunt:   No.

\* \* \*

Prosecutor:   Has [S.P.] ever made any kind of accusations like this before?

Mother:       Never.

Prosecutor:   You've obviously known her her whole life?

Mother:       Yes.

Prosecutor:   And in terms of telling lies, what can you tell us?

Mother:       That doesn't fit her description.

Prosecutor:   Have you ever known her to lie?

Mother:       Yes, but she tells on herself.

Denson also contends that Jones improperly bolstered S.P. by testifying that the victim's ability to demonstrate how Denson made her touch him and her consistency in reporting the allegations "lead to her credibility as a child."

**{¶24}** Denson did not object to the testimony, so we review for plain error. *See* Crim.R. 52(B). Plain error exists where there is an obvious deviation from a legal rule which affected the defendant's substantial rights, or influenced the outcome of the proceeding. *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). The burden is on the defendant to show a violation of his substantial rights. *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶ 14. Notice of plain error is taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. *State v. Landrum*, 53 Ohio St.3d 107, 111, 559 N.E.2d 710 (1990).

**{¶25}** In general, a witness may not testify as to the veracity of the statements of a child victim because it is the fact-finder who bears the burden of assessing the credibility and veracity of the witness. *State v. Huff*, 145 Ohio App.3d 555, 561, 763 N.E.2d 695 (1st Dist.2001). In *State v. Boston*, the Ohio Supreme Court held that witness testimony expressing an opinion that the child victim's allegations were truthful was improper "bolstering evidence." *State v. Boston*, 46 Ohio St.3d 108, 129, 545 N.E.2d 1220 (1989). However, "only statements that directly support the veracity of the witness are prohibited." *State v. Cashin*, 10th Dist. Franklin No. CA2008-11-138, 2009-Ohio-6419, ¶ 20. This distinction recognizes that, "indirect bolstering of a victim's credibility is not the same as the direct rendering of an opinion as to a victim's veracity that was involved in *Boston*." *Id.*

**{¶26}** In this case, none of the witnesses offered an opinion as to the truth of the sexual-abuse allegations against Denson. Great-aunt and mother were not asked whether they believed the allegations. Jones testified that the victim's consistency and ability to demonstrate how Denson made her touch him "lead to her credibility as a

child." Jones did not offer an opinion on whether the allegations were truthful or whether the child had been abused. Although the testimony may have indirectly bolstered the victim's credibility, the statements did not directly support the child's veracity. *See id.* at ¶ 20.

**{¶27}** Even if the testimony were improper, Denson did not establish that the error affected the outcome of the trial. Here, the victim testified and was subject to cross-examination. The jury was able to hear the victim's testimony, observe her demeanor, and judge her credibility independent of the other witnesses' testimony.

**{¶28}** We overrule the second assignment of error.

## Conclusion

**{¶29}** Having overruled Denson's two assignments of error, we affirm the judgment of the trial court.

Judgment affirmed.

**CROUSE, P.J.,** and **BOCK, J.,** concur.

Please note:
The court has recorded its own entry this date.